UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 19 CR 669 |
| GREGG SMITH, | Judge Edmond E. Chang |
| MICHAEL NOWAK, | |
| JEFFREY RUFFO, and | |
| CHRISTOPHER JORDAN, | |
| Defendants. | |

**BRIEF IN SUPPORT OF THE**
**<u>UNITED STATES' MOTION FOR A HEARING</u>**

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

Matthew F. Sullivan, Trial Attorney
Avi Perry, Assistant Chief
1400 New York Avenue, N.W.
Washington, D.C. 20530
matthew.sullivan2@usdoj.gov
avi.perry@usdoj.gov
(202) 353-6200 (Sullivan)
(202) 616-4619 (Perry)

**Table of Contents**

BACKGROUND .................................................................................................... 1

    A.  Initiation of the CFTC's Investigation ................................................... 1

    B.  Public Statements by the CFTC Regarding the CFTC Silver Investigation.... 2

    C.  Sworn Testimony Taken by the CFTC .................................................. 3

    D.  Mr. Meister's Appointment and Work as CFTC Enforcement Director .......... 4

    E.  The CFTC Silver Investigation is Closed.............................................. 6

    F.  Meister's Departure from the CFTC ..................................................... 6

    G.  The Superseding Indictment ............................................................... 7

DISCUSSION ...................................................................................................... 7

I.  LEGAL STANDARD ..................................................................................... 7

    A.  Constitutional Principles ....................................................................... 7

    B.  Applicable State Rules of Professional Conduct ................................... 8

II.  ARGUMENT............................................................................................... 11

    A.  Meister's Personal and Substantial Participation in the
CFTC Silver Investigation May Present a Conflict in This Case ................... 11

        1.  *Meister May Have "Participated Personally and Substantially"
in the CFTC Silver Investigation When He Supervised It From
January to March 2011* ............................................................. 12

        2.  *This Criminal Case is Sufficiently Similar to the
CFTC Silver Investigation*........................................................... 14

        3.  *Meister's Participation in the CFTC Silver Investigation
May Present a Conflict with His Representation of Nowak
in this Criminal Case* ................................................................... 17

    B.  Meister May Have Acquired Confidential CFTC Information
as the CFTC Enforcement Director and Thus May Be
Conflicted from Representing Nowak in this Criminal Case
in Which the Confidential Information Could Be Used
to the Material Disadvantage of CFTC ............................................. 22

    C.  If the Court Concludes that Meister Has a Conflict but
Disqualification is Not Required, the Court Should Obtain
Nowak's Informed Consent Waiving Any Conflicts of Interest
Presented by Meister's Representation.......................................... 26

CONCLUSION.................................................................................................. 31

## Table of Authorities

Cases

*Arroyo v. City of Buffalo*,
    15 CV-753, 2017 WL 3085835 (W.D.N.Y. July 20, 2017)...................................... 12

*Babineaux v. Foster*,
    No. CIV.A. 04-1679, 2005 WL 711604 (E.D. La. Mar. 21, 2005) ................... 12, 13

*Brady v. United States*,
    397 U.S. 742 (1970) .............................................................................................. 30

*Chicago v. Purdue Pharma L.P.*,
    No. 14 C 4361, 2014 WL 7146362 (N.D. Ill. Dec. 15, 2014) ................................... 8

*Dugar v. Bd. of Educ. of the City of Chicago, Dist. 299*,
    No. 92 C 1621, 1992 WL 142302 (N.D. Ill. June 18, 1992) ................................... 21

*Enoch v. Gramley*,
    70 F.3d 1490 (7th Cir. 1995) ................................................................................ 24

*Essex Equity Holdings USA, LLC v. Lehman Bros.*,
    909 N.Y.S.2d 285 (Sup. Ct. N.Y. Cnty. 2010) .................................................. 9, 10

*Goodwine v. City of New York*,
    No. 15-CV-2868 (JMF), 2016 WL 379761 (S.D.N.Y. Jan. 29, 2016) .................... 18

*Great Divide Wind Farm 2 LLC v. Aguilar*,
    No. CIV 19-0099, 2019 WL 6330207 (D.N.M. Nov. 26, 2019).............................. 15

*Green v. City of New York*,
    No. 10 Civ. 8214, 2011 WL 2419864 (June 7, 2011) ......................... 12, 14, 15, 20

*Hall v. United States*,
    371 F.3d 969 (7th Cir. 2004) ................................................................................ 24

*In re Coleman*,
    895 N.Y.S.2d 122 (2d Dept. 2010)................................................................... 12, 13

*In re Nat'l Prescription Opiate Litig.*,
    Case No. 1:17-md-2804, 2019 WL 1274555 (N.D. Ohio March 20, 2019) ........... 22

*In re Sofaer*,
    728 A.2d 625, 627 (D.C. Ct. App. 1999) ............................................................. 14

*Kadish v. Commodity Futures Trading Comm'n*,
    548 F. Supp. 1030 (N.D. Ill. 1982) ................................................................. 17, 18

*Kessenich v. Commodity Futures Trading Comm'n*,
    684 F.2d 88 (D.C. Cir. 1982) ................................................................................ 18

*MPL, Inc. v. Cook*,
    498 F. Supp. 148 (N.D. Ill. 1980) ........................................................................ ##

*Porter v. Bd. of Educ. for the City of Chicago, District 299*,
    No. 92 C 0533, 1992 WL 166570 (N.D. Ill. July 9, 1992) ..................................... 21

*Richards v. Lewis,*
    No. CIV.A.05-0069, 2005 WL 2645001 (D.V.I. Oct. 14, 2005) ............................. 13

*Sec. Investor Protection Corp. v. Vigman,*
    587 F. Supp. 1358 (C.D. Cal. 1984)...................................................... 15, 20

*United States v. Adkins,*
    274 F.3d 444 (7th Cir. 2001) ..................................................................... 30

*United States v. Basham,*
    918 F. Supp. 2d 787 (C.D. Ill. 2013)....................................................... 24

*United States v. Beniach,*
    825 F.2d 1207 (7th Cir. 1987) ................................................................... 30

*United States v. Clark,*
    333 F. Supp. 2d 789 (E.D. Wisc. 2004) .................................................... 8

*United States v. Curcio,*
    680 F.2d 881 (2d Cir. 1982).................................................................... 26

*United States v. Dorfman,*
    542 F. Supp. 402 (N.D. Ill. 1982) ........................................................... 19

*United States v. Garcia,*
    517 F.2d 272 (5th Cir. 1975) .................................................................. 26

*United States v. Mers,*
    701 F.2d 1321 (11th Cir. 1983) ............................................................... 26

*United States v. Perez,*
    325 F.3d 115 (2d Cir. 2003).................................................................... 30

*United States v. Philip Morris, Inc.,*
    312 F. Supp. 2d 27 (D.D.C. 2004) ......................................................... 20

*United States v. Turner,*
    651 F.3d 743 (7th Cir. 2011) ............................................................... 7, 8

*United States v. Villaspring Health Care Ctr., Inc.,*
    No. CIV.A. 3:11-43-DCR, 2011 WL 5330790
    (E.D. Ky. Nov. 7, 2011).................................................... 15, 16, 19, 25

*Watkins v. Trans Union, LLC,*
    869 F.3d 514 (7th Cir. 2017) ..................................................................... 9

*Wheat v. United States,*
    486 U.S. 153 (1988) ....................................................................... 7, 8, 28, 29

## Statutes

New York Rules of Professional Conduct,
    22 N.Y. Comp. Codes R. & Regs. § 1200.0............................................... 9

New York Rules of Professional Conduct

Rule 1.0 ................................................................................................ 14, 27

Rule 1.7(a) .................................................................................................... 26

Rule 1.7(b) .................................................................................................... 27

Rule 1.9 .......................................................................................................... 9

Rule 1.11 ................................................................................... 10, 14, 23

Rule 1.11(a)(1) ............................................................................................ 26

Rule 1.11(a)(2) ......................................................... 9, 12, 14, 17, 19, 22

Rule 1.11(b) ................................................................................................. 31

Rule 1.11(c) .............................................................................. 9, 10, 22

Rule 1.11(e) .................................................................................................. 14

CFTC Materials

Antidisruptive Practices Authority,
 78 Fed. Reg. 31,890 (May 28, 2013) ...................................................... 5

*CFTC's 2008 Fiscal Year Enforcement Roundup*,
 CFTC Release No. 5562-08 (Oct. 2, 2008) ............................................ 1

*CFTC Announces Departure of Enforcement Director David Meister*,
 CFTC Release No. 6735-13 (Oct. 1, 2013) ........................................ 6, 7

*CFTC Closes Investigation Concerning the Silver Markets*,
 CFTC Release No. 6709-13 (Sept. 25, 2013)...................... 1, 2, 6, 16, 17

*CFTC Orders Panther Energy Trading LLC and its Principal Michael J.
 Coscia to Pay $2.8 Million and Bans Them from Trading for One
 Year, for Spoofing in Numerous Commodity Futures Contracts*,
 CFTC Release No. 6649-13 (July 22, 2013) ........................................... 5

*Chairman Gary Gensler Announces the Appointment of
 David Meister as Director of Enforcement*,
 CFTC Release No. 5930-10 (Nov. 1, 2010) ............................................ 4

Commissioner Bart Chilton, *Statement at the CFTC Public Meeting
 on Anti-Manipulation and Disruptive Trading Practices* (Oct. 26, 2010).......... 2, 3

October 21, 2019 Letter from David Newman to Avi Perry.............................. 3, 4, 12

Prohibition on the Employment, or Attempted Employment, of Manipulative
 and Deceptive Devices and Prohibition on Price Manipulation,
 76 Fed. Reg. 41,398 (July 14, 2011) ....................................................... 4

<u>Court Documents</u>

Attorney Appearance for Defendant Michael Thomas Nowak by
David Meister, *Commodity Futures Trading Commission v. Gregg Smith
& Michael Nowak*, 19-cv-6163, Dkt. No. 21 (N.D. Ill. Sept. 23, 2019) ............... 18

First Amended Motion to Vacate or Set Aside Judgment and Sentence
Under 18 U.S.C. ¶ 2255 With Supporting Memorandum of Law,
*United States v. Michael Coscia*, 19-cv-5003,
Dkt. No. 5 (N.D. Ill. Aug. 5, 2019) ....................................................................... 29

Memorandum of Law in Support of Defendant John Pacilio's
Motion to Dismiss the Indictment, *United States v. Bases, et al.*,
18-cr-48, Dkt. No. 118 (N.D. Ill. Nov. 16, 2018) ................................................. 27

Memorandum of Law in Support of Defendant's Motion to Dismiss
the Superseding Indictment or, in the Alternative,
to Strike Prejudicial Surplusage, *United States v. Flotron*,
17-cr-220, Dkt. No. 67 (D. Conn. Feb. 6, 2018) .................................................... 28

Memorandum Opinion and Order, *United States v. Coscia*,
19-cv-5003, Dkt. No. 15 (N.D. Ill. Dec. 12, 2019) ................................................ 29

Minute Entry, *United States v. Coscia*,
19-cv-5003, Dkt. No. 19 (N.D. Ill. Dec. 19, 2019) ................................................ 29

<u>Misc.</u>

"18 U.S.C. §§ 1341 & 1343 Definition of Material,"
Pattern Criminal Jury Instructions of the Seventh Circuit (2012 ed.).......... 23, 24

N.D. Ill. Local Rule 83.50 ............................................................................................ 8

Superseding Indictment, *United States v. Gregg Smith, et al.*,
19 CR 669, Dkt. No. 52 (N.D. Ill. Nov. 14, 2019).............................. 3, 7, 16, 17, 23

The United States of America, by Robert Zink, Chief of the Fraud Section of the Criminal Division of the U.S. Department of Justice ("DOJ"), respectfully moves the Court for a hearing to determine whether David Meister, counsel for defendant Michael Nowak, has a conflict in this case and, if so, to take appropriate measures to protect Nowak's Sixth Amendment rights and the integrity of these proceedings. The government submits this brief to provide the Court with the relevant factual background and legal framework.

From January 2011 through October 2013, Meister was the Director of the Division of Enforcement at the U.S. Commodity Futures Trading Commission ("CFTC"). In that role, from January to March 2011, Meister supervised the CFTC's investigation into alleged manipulation of the silver market, which focused in part on the same conduct underlying certain allegations in this criminal case.

## BACKGROUND

### A.    Initiation of the CFTC's Investigation

In September 2008, the CFTC publicly confirmed that its Division of Enforcement had been investigating complaints about possible unlawful activity in the silver market (the "CFTC Silver Investigation"). (*CFTC's 2008 Fiscal Year Enforcement Roundup*, CFTC Release No. 5562-08 (Oct. 2, 2008) (Sullivan Decl. Ex. A).) The investigation arose from complaints the CFTC had received regarding silver prices that "focused on whether the silver futures contracts traded on the Commodity Exchange (COMEX) were being manipulated." (*CFTC Closes Investigation Concerning the Silver Markets*, CFTC Release No. 6709-13 (Sept. 25,

2013) (Sullivan Decl. Ex. B).) The complaints noted that the prices for silver futures contracts tended to be lower than prices for other silver products (*e.g.*, physical silver coins and bullion), and that large traders with short open positions in silver futures contracts were responsible for depressing the futures prices. (*Id.*)

## B. Public Statements by the CFTC Regarding the CFTC Silver Investigation

The CFTC Silver Investigation was a high-profile investigation by the CFTC that lasted for several years and drew the focus of individual CFTC Commissioners. For example, on October 26, 2010, CFTC Commissioner Bart Chilton issued a statement about the CFTC's Silver Investigation that he had "been urging the agency to say something on the matter for months" because the "public deserves some answers to their concerns that silver markets are being, and have been, manipulated." (Commissioner Bart Chilton, *Statement at the CFTC Public Meeting on Anti-Manipulation and Disruptive Trading Practices* (Oct. 26, 2010) (Sullivan Decl. Ex. C).) In his statement, Chilton explained:

> I believe that there have been repeated attempts to influence prices in the silver markets. There have been fraudulent efforts to persuade and deviously control that price. Based on what I have been told by members of the public, and reviewed in publicly available documents, I believe violations to the Commodity Exchange Act (CEA) have taken place in silver markets and that any such violation of the law in this regard should be prosecuted.

> In saying this, I am fully aware of the prohibition from divulging trader names or information about their positions. I am extremely careful not to violate the law in this, or any, regard. I also cannot pre-judge anything the

agency may do with regard to our silver investigation, or any other matter. (*Id.*)

## C. Sworn Testimony Taken by the CFTC

In August 2010 and September 2010, the CFTC took testimony from Nowak and one of his current co-defendants in this criminal case, Christopher Jordan, in connection with the CFTC Silver Investigation.[1] (Oct. 21, 2019 Letter from David Newman to Avi Perry (Sullivan Decl. Ex. D).) The Superseding Indictment in this case alleges that Nowak and Jordan both made material misstatements in the testimony they gave during their CFTC depositions. (Superseding Indictment ¶¶ 40-41.) As alleged, Nowak knowingly and intentionally gave false answers to questions from a CFTC investigator, including (*Id.* ¶ 40):

| Question | Nowak's False Answer |
| --- | --- |
| "To your knowledge, have traders at [Bank A] in the metals group put up bids or offers to the market which they didn't intend to execute and then pulled them before they got hit or lifted?" | "No." |

Similarly, as alleged, Jordan knowingly and intentionally gave false answers to questions from a CFTC investigator, including (*Id.* ¶ 41):

| Question | Jordan's False Answer |
| --- | --- |
| "While you were working at [Bank A], did you ever engage in trading for the purpose of influencing the price on COMEX?" | "No." |
| "Did you ever show a bid or offer on Globex that you didn't intend to execute?" | "Only if it, I would only cancel something if I changed my mind or if it was put in error, but, no." |

---

[1]     Nowak was not represented by Meister at his CFTC deposition, but had counsel present to represent him.

### D.    Mr. Meister's Appointment and Work as CFTC Enforcement Director

On November 1, 2010, the CFTC announced Meister's appointment as the new Director of Enforcement (*Chairman Gary Gensler Announces the Appointment of David Meister as Director of Enforcement*, CFTC Release No. 5930-10 (Nov. 1, 2010) (Sullivan Decl. Ex. E)), and Meister assumed the role in January 2011 (Newman Letter (Sullivan Decl. Ex. D)).   As the Director of Enforcement, Meister had supervisory responsibility over the CFTC Silver Investigation from January 2011 to March 2011.  (*Id.*)  In March 2011, Meister recused himself from the CFTC Silver Investigation "in light of his prior representation of another JP Morgan employee in an unrelated matter."[2]  (*Id.*)  Prior to Meister's recusal, he "received briefings from staff, emails, and memoranda about the [CFTC Silver Investigation]."  (*Id.*)

In addition to overseeing investigations, Meister was closely involved with developing the CFTC's rules and guidance regarding market manipulation and disruptive trading practices, such as spoofing.  Specifically, on July 14, 2011, the CFTC adopted final rules pursuant to Dodd-Frank that "broadly prohibit fraud and manipulation" in connection with, *inter alia*, trading futures contracts.  (Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398 (July 14, 2011) (Sullivan Decl. Ex. F).)  Relatedly, on May 28, 2013 (during Meister's tenure), the

---

[2]    The government has no additional information regarding the basis for Meister's recusal, nor how it would bear (if at all) on his representation of Nowak.

CFTC issued interpretive guidance and a policy statement to "provide market participants and the public with guidance on the scope and application of the statutory prohibitions" set forth in the Dodd-Frank anti-spoofing provision and "guidance on the manner in which [the CFTC] intends to apply" that provision. (Antidisruptive Practices Authority, 78 Fed. Reg. 31,890 (May 28, 2013) (Sullivan Decl. Ex. G).) The guidance stated, *inter alia*, that "the Commission intends to distinguish between legitimate trading and 'spoofing' by evaluating all of the facts and circumstances of each particular case, including a person's trading practices and patterns." (*Id.* at 31,896.)

As Director of Enforcement, Meister also oversaw the first case applying that guidance when the CFTC brought under Dodd-Frank's anti-spoofing provision when, on July 22, 2013, the CFTC simultaneously filed and settled charges against Michael Coscia and Panther Energy Trading LLC. (*CFTC Orders Panther Energy Trading LLC and its Principal Michael J. Coscia to Pay $2.8 Million and Bans Them from Trading for One Year, for Spoofing in Numerous Commodity Futures Contracts*, CFTC Release No. 6649-13 (July 22, 2013) (Sullivan Decl. Ex. H).) The CFTC charged Coscia and Panther with "engaging in the disruptive practice of 'spoofing' by utilizing a computer algorithm that was designed to illegally place and quickly cancel bids and offers in futures contracts" across several types of commodities from August 8, 2011 through October 18, 2011. (*Id.*)

### E.     The CFTC Silver Investigation is Closed

While Meister was recused, the CFTC Silver Investigation continued until September 25, 2013, when the CFTC publicly announced that it had closed the CFTC Silver Investigation and was not recommending charges.     (CFTC Release No. 6709-13.)  The CFTC explained that the Division of Enforcement had conducted an "exhaustive investigation" and had "focused on identifying and evaluating whether there was any trading activity in violation of the Commodity Exchange Act and Commission regulations including the anti-manipulation provisions." (*Id.*)  After that investigation, the CFTC concluded that, "[b]ased upon the law and evidence as they exist at this time, there is not a viable basis to bring an enforcement action with respect to any firm or its employees related to our investigation of silver markets." (*Id.*)   The CFTC also explained that "[f]or law enforcement and confidentiality reasons, the CFTC only rarely comments publicly on whether it has opened or closed any particular investigation," but was doing so now because "given that this particular investigation was confirmed in September 2008, the CFTC deemed it appropriate to inform the public that the investigation is no longer ongoing."  (*Id.*)

### F.     Meister's Departure from the CFTC

On October 1, 2013, the CFTC announced that Meister would leave the CFTC that month.  (*CFTC Announces Departure of Enforcement Director David Meister*, CFTC Release No. 6735-13 (Oct. 1, 2013) (Sullivan Decl. Ex. I).) The announcement noted that Meister was "a close counselor to the Chairman on enforcement matters and other significant issues" and that he "also led key Dodd-Frank enforcement

rulemakings, such as the prohibition against a wide range of manipulative and deceptive conduct . . . and the Commission's disruptive practices guidance." (*Id.*)

### G. The Superseding Indictment

As relevant to this Motion, on November 14, 2019, a grand jury returned a Superseding Indictment charging Nowak and three co-defendants and alleging their participation in a racketeering conspiracy in connection with the manipulation of the markets for precious metals futures contracts. The Superseding Indictment alleges, *inter alia*, that between approximately March 2008 and August 2016, Nowak together with his co-conspirators, placed orders to buy and sell precious metals futures contracts, including silver futures contracts, with the intent to cancel those orders before execution, including in an attempt to artificially affect prices and to profit by deceiving other market participants. (Superseding Indictment ¶ 26.)

## DISCUSSION

## I. LEGAL STANDARD

### A. Constitutional Principles

The Sixth Amendment provides that every criminal defendant has the right to the effective assistance of counsel, but "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). A defendant's selection of counsel, therefore, "may be overridden and counsel may be disqualified where an actual conflict of interest or a serious potential for conflict exists." *United States v. Turner*,

-7-

651 F.3d 743, 749 (7th Cir. 2011); *see also Wheat*, 486 U.S. at 159 ("Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government."). The concern is that such a conflict "might prevent a lawyer from vigorously representing one client to the detriment or another, or provide the lawyer with an unfair advantage against his former client." *United States v. Clark*, 333 F. Supp. 2d 789, 793 (E.D. Wisc. 2004) (citations omitted). "A conflict that amounts to a breach of the code of professional ethics 'obviously qualifies' as an actual conflict of interest of the sort that allows the trial court to disqualify counsel regardless of a defendant's offer to waive." *Turner*, 651 F.3d at 749.

The Supreme Court has recognized that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. District courts, therefore, are afforded "substantial latitude" when considering the disqualification of counsel when faced with a potential or actual conflict, even while recognizing the presumption in favor of the defendant's choice of counsel. *Id.* at 163-64.

## B. Applicable State Rules of Professional Conduct

Meister is admitted to practice in New York, has his principal office in New York City, and thus is bound by the New York Rules of Professional Conduct, which govern here. *See* N.D. Ill. Local Rule 83.50; *cf. Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2014 WL 7146362, at *5 n.3 (N.D. Ill. Dec. 15, 2014) (pursuant to Local

Rule 83.50, applying the D.C. Rules of Professional Conduct to a lawyer practicing before the court because, *inter alia*, the lawyer's principal office was located in the District of Columbia). Rule 1.11(a)(2) of the New York Rules of Professional Conduct prohibits former government lawyers—such as Meister—from representing clients in certain matters they participated in while in government service.[3] N.Y. R. Prof. Conduct (hereinafter, referred to collectively as the "New York Rules" or individually as "Rule #.##"), 22 N.Y. Comp. Codes R. & Regs. § 1200.0. As relevant here, Rule 1.11(a)(2) states that:

> [A] lawyer who has formerly served as a public officer or employee of the government . . . *shall not represent a client in connection with a matter in which the lawyer participated personally and substantially* as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

*Id*. (emphasis added).

In addition, Rule 1.11(c) states that:

> [A] lawyer having information that the lawyer knows is confidential government information about a person,

---

[3] Rule 1.9 is the general rule governing a lawyer's duties to former clients, however, "[c]urrent and former government lawyers must comply with [Rule 1.9] to the extent required by Rule 1.11." Rule 1.9 cmt. 1. The New York State "Appellate Division has not enacted the Preamble, Scope and Comments, which are published solely by the New York State Bar Association to provide guidance for attorneys in complying with the Rules." *Essex Equity Holdings USA, LLC v. Lehman Bros.*, 909 N.Y.S.2d 285, 290 n.5 (Sup. Ct. N.Y. Cnty. 2010); *see* New York State Bar Association, New York Rules of Professional Conduct with Comments (as amended through June 1, 2018) (https://www.nysba.org/WorkArea/DownloadAsset.aspx?id=50671) (Sullivan Decl. Ex. J). Nonetheless, "[i]n interpreting the Rules of Professional Conduct, federal courts may rely on the specific guidance offered in the commentary." *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017).

> acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.

*Id.* The term "confidential government information" includes information that "has been obtained under governmental authority and that, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and that is not otherwise available to the public." *Id.*

"[T]he disqualification provisions [of Rule 1.11] apply 'regardless of whether a lawyer is adverse to a former client and are thus designed not only to protect the former client, but also to prevent a lawyer from exploiting public office for the advantage of another client.'" *Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.*, 909 N.Y.S.2d 285, 290 (Sup. Ct. N.Y. Cnty. 2010) (quoting Rule 1.11 cmt. 3).

Rule 1.11 "represents a balancing of interests" such that a former government lawyer is "disqualified only from particular matters in which the lawyer participated personally and substantially." Rule 1.11 cmt 4. The rule recognizes that the "government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards." *Id.* The rule, therefore, is not meant to "be so restrictive as to inhibit transfer of employment to and from the government," but the rule seeks to avoid any "unfair advantage [that] could accrue to the other client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service." *Id.*

-10-

## II.    ARGUMENT

First, as set forth below, under the New York Rules of Professional Conduct, Meister may have a conflict that prevents him from representing Nowak due to his supervision of the CFTC's Silver Investigation as the CFTC Enforcement Director, because of the congruity between the CFTC's Silver Investigation and this criminal case—involving some of the same individuals, conduct, and legal theories.

Second, as a separate basis and as set forth below, Meister may have a conflict based on his possession of confidential government information that he may have received by virtue of his position as the CFTC Enforcement Director and that he could use to the material disadvantage of a CFTC witness the government expects to call in its case-in-chief.

Third, if the Court determines that Meister has a conflict, it then must determine whether disqualification is required, or whether Nowak may give informed consent waiving any actual or potential conflicts that Meister's representation of Nowak may present, including that Meister may possess confidential CFTC information which could help Nowak's case, but which Meister cannot use to defend Nowak because of Meister's duty of confidentiality to his former client, the CFTC.

### A.    Meister's Personal and Substantial Participation in the CFTC Silver Investigation May Present a Conflict in This Case

The CFTC has not consented to Meister's representation of Nowak in this criminal case.  As discussed below, Meister may be conflicted from representing Nowak because Meister may have personally and substantially participated in the

CFTC Silver Investigation, which, under Rule 1.11(a)(2), is sufficiently related to this criminal case.

1. *Meister May Have "Participated Personally and Substantially" in the CFTC Silver Investigation When He Supervised It From January to March 2011*

As described above, Meister supervised the CFTC Silver Investigation from January to March 2011, and received staff briefings, emails, and memoranda about the investigation. (Newman Letter (Sullivan Decl. Ex. D).)

"For purposes of Rule 1.11(a)(2), substantial participation is substantive in nature and directly affects the merits of the prior case." *Arroyo v. City of Buffalo*, 15-CV-753, 2017 WL 3085835, at *12 (W.D.N.Y. July 20, 2017) (internal quotation marks and alterations omitted). "The question turns on the scope of the lawyer's work on the first matter" and therefore courts have found that "[i]t is relevant whether the lawyer merely gathered and produced documents, responded to pleadings and attended court conferences or, rather, served as counselor and advisor on the broad subject at hand." *Green v. City of New York*, No. 10 Civ. 8214, 2011 WL 2419864, at *2 (June 7, 2011). When a former government attorney is "personally involved to an important, material degree, in the investigation or deliberative processes regarding the transactions or facts in question," he has "participated personally and substantially" under Rule 1.11(a)(2). *In re Coleman*, 895 N.Y.S.2d 122, 124 (2d Dept. 2010); *see also Babineaux v. Foster*, No. CIV.A. 04-1679, 2005 WL 711604, at *5 (E.D. La. Mar. 21, 2005) ("Personal and substantial involvement can be

created through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise.").

As the CFTC Enforcement Director, Meister was personally involved in overseeing the substance of the CFTC Silver Investigation between January and March 2011. His substantive involvement was not limited to a superficial level, as shown by his receipt of briefings and memoranda about the investigation in connection with his role as head of the CFTC's Enforcement Division and his responsibility for directing all CFTC investigations. Meister's personal and substantial participation in the investigation is made especially clear when drawn in contrast to cases where courts have concluded that a former government lawyer was only superficially involved in a matter. *See, e.g., In re Coleman*, 895 N.Y.S. 2d at 125 (former chief surrogate's court attorney not disqualified where his review of petitioner's case during prior government service was primarily administrative and had no substantive legal involvement that affected the merits of petitioner's proceeding); *Richards v. Lewis*, No. CIV.A.05-0069, 2005 WL 2645001, at *3-*4 (D.V.I. Oct. 14, 2005) (finding disqualification not warranted because lawyer's prior work as an assistant attorney general "was limited, pro forma and ultimately nominal" such that lawyer "was never exposed to any information, let alone confidential information, that could be used in her [current] representation"); *Babineaux*, 2005 WL 711604, at *5-6 (finding attorney's "cursory involvement" as a government employee was limited to being copied on two letters related to the matter and the lack of evidence showing attorney conducted any investigation or provided

-13-

any legal advice did "not rise to the level of 'personal and substantial' participation in a matter").

>       2.      *This Criminal Case is Sufficiently Similar to the CFTC Silver Investigation*

The CFTC Silver Investigation and this criminal case are sufficiently related "matters" under Rule 1.11(a)(2) because of the significant overlap of the parties, legal theories, and underlying substantive conduct.

The New York Rules broadly defines a "matter" to include "any litigation, judicial or administrative proceeding, case, claim, application, request for a ruling or other determination, contract, controversy, investigation, charge, accusation, arrest, negotiation, arbitration, mediation or any other representation involving a specific party or parties." Rule 1.0(l).[4] Consistent with that broad definition, the precise form of a case or investigation is not dispositive because "a 'matter' may continue in another form." Rule 1.11 cmt. 10. In order to determine "whether two particular matters are the same, the lawyer should consider the extent to which (i) the matters involve the same basic facts, (ii) the matters involve the same or related parties, and (iii) time has elapsed between the matters." *Id.*; *see also Green*, 2011 WL 2419864, at *2 ("The scope of a matter [under Rule 1.11] is an intensely fact-specific inquiry."). A government investigation, and litigation that arises out of it, can both be the same "matter" for purposes of the disciplinary rules. *See In re Sofaer*, 728 A.2d 625, 627,

---

[4]      Despite this expansive definition, the term "matter" in Rule 1.11 "does not include or apply to agency rulemaking functions." Rule 1.11(e).

646 (D.C. Ct. App. 1999) (finding investigation of the bombing of Pan Am Flight 103 was same matter as subsequent criminal and civil litigation against Libya concerning same).

When concluding that two matters are the same, courts have looked to the substantive similarities between matters and rejected focusing strictly on form. *See, e.g., Great Divide Wind Farm 2 LLC v. Aguilar*, No. CIV 19-0099, 2019 WL 6330207, at *16 (D.N.M. Nov. 26, 2019) ("The test for determining whether two matters are the same is a test about substance, and not about form."); *Green*, 2011 WL 2419864, at *2 (disqualifying an attorney pursuant to Rule 1.11 and noting that "[w]hile the same legal theory would not be sufficient to make two matters the same, the matters might be the same even though they pertain to different lawsuits with different parties."); *Sec. Investor Protection Corp. v. Vigman*, 587 F. Supp. 1358, 1365-66 (C.D. Cal. 1984) (finding two civil lawsuits, filed ten years apart with some identical and some different claims, constituted the same matter because they addressed the same conduct involving a particular situation and specific parties).

For example, in *United States v. Villaspring Health Care Center, Inc.*, the court found that the "Kentucky Attorney General's criminal investigation of Villaspring and the current federal civil suit against Villaspring constitute the same matter for the purposes of Rule 1.11."[5] No. CIV.A. 3:11-43-DCR, 2011 WL 5330790, at *4 (E.D.

---

[5] In *Villaspring,* the court applied Rule 1.11 from the Kentucky Rules of Professional Conduct, which is substantially the same as Rule 1.11 from the New York Rules. The court ultimately disqualified the former Kentucky Assistant Attorney General from representing Villaspring in the federal civil action under Rule

Ky. Nov. 7, 2011). The court explained "the fact that one matter was criminal and one is civil is not determinative" because "the Court must analyze the matters' substance, rather than their forms." *Id.* In that analysis, the court noted that "the state matter involved an investigation of the very parties that are defendants in this current federal case," meaning they "involve[d] the same parties on one side and related parties on the other." *Id.* at *5. Applying the reasoning from *Villaspring* to this case, the CFTC Silver Investigation and this case meet the related matter test even though the CFTC's was a civil investigation and this is a criminal case.

The CFTC Silver Investigation examined allegations of misconduct in the silver market arising from complaints that "were focused on whether the silver futures contracts traded on the Commodity Exchange, Inc. (COMEX) were being manipulated." (CFTC Release No. 6709-13 (Sullivan Decl. Ex. B.)) This criminal case alleges, *inter alia*, that the defendants and their co-conspirators manipulated the markets for precious metals futures contracts for over eight years, including through violations of the Commodity Exchange Act. (*See, e.g.,* Superseding Indictment ¶¶ 12, 26, 56.) Two of the defendants in this case—Michael Nowak and Christopher Jordan—were deposed as part of the CFTC's investigation into silver trading, and questioned about their own trading as well as that of their co-workers at the financial institution referred to as "Bank A" in the Superseding Indictment. (*See id.* ¶¶ 40-41.) The CFTC was examining "whether there was any trading activity in violation of the

---

11(a)(2) based on his work on the state criminal investigation. *Villaspring*, 2011 WL 5330790, at *4-*5.

Commodity Exchange Act and Commission regulations including the anti-manipulation provisions" (CFTC Release No. 6709-13 (Sullivan Decl. Ex. B.)), and Nowak is charged with violating the price manipulation and anti-spoofing provisions of the Commodity Exchange Act. (*See* Superseding Indictment ¶¶ 56-57, 77.) Indeed, part of the CFTC's questioning of Nowak and Jordan centered on conduct that is at the core of this criminal case—the entry of futures orders without the intent to execute. Those similarities make plain that the CFTC Silver Investigation is sufficiently related to this criminal case for purposes of Rule 1.11(a)(2).

3.  *Meister's Participation in the CFTC Silver Investigation May Present a Conflict with His Representation of Nowak in this Criminal Case*

As relevant to the Court's Rule 1.11(a)(2) analysis, Meister now represents Nowak in connection with a matter in which Meister participated personally and substantially—the CFTC Silver Investigation.

Courts in the Northern District of Illinois have long held that former CFTC lawyers cannot leave the government and then work on CFTC matters they had participated in previously, even minimally. In *Kadish v. Commodity Futures Trading Commission*, the court had "little difficulty" concluding that a former CFTC lawyer should be disqualified from representing a broker in connection with a CFTC investigation the lawyer had worked on while at the CFTC. 548 F. Supp. 1030, 1032-33 (N.D. Ill. 1982). The former CFTC lawyer was disqualified even though his participation in the CFTC matter was limited and did "not appear to have vested him with any privileged information." *Id.* at 1035. Despite his limited role, the court

-17-

found the lawyer had "substantial responsibility"[6] for the matter because he had briefly discussed case strategy with other CFTC attorneys, drafted a "boilerplate" injunctive complaint by "cutting and pasting portions of pleadings in prior CFTC cases," and accompanied a junior CFTC attorney to court to hear her argue a motion. *Id.* at 1032-33. If this criminal case, instead, were a civil case brought by the CFTC, under *Kadish* and other similar cases, there would be "little difficulty" in concluding that Meister has a conflict.[7] *See, e.g., Kessenich v. Commodity Futures Trading Comm'n*, 684 F.2d 88, 96 (D.C. Cir. 1982) (disqualifying former CFTC attorney from representing the defendant who was the subject of plaintiff's complaint to CFTC that the attorney had reviewed for completeness and to ensure it stated a claim because of the "appearance of impropriety" even though the attorney had no specific memory

---

[6] Determining whether a lawyer had "substantial responsibility" in a matter is effectively the same as assessing whether a lawyer "participated personally and substantially" in a matter. American Bar Association ("ABA") Code of Professional Responsibility Disciplinary Rule ("DR") 9-101(B) stated that "[a] lawyer shall not accept private employment in a matter in which he had *substantial responsibility* while he was a public employee." *Kadish*, 548 F. Supp. at 1032-33 (emphasis added). New York Code of Professional Responsibility Disciplinary Rule 9-101(B) was identical to the ABA Code DR 9-101(B), and it is a predecessor to Rule 1.11. *See Goodwine v. City of New York*, No. 15-CV-2868 (JMF), 2016 WL 379761, at *2 n.2 (S.D.N.Y. Jan. 29, 2016) ("Rule 1.11 is similar in substance to its predecessor, Disciplinary Rule 9-101(B)").

[7] Meister has entered an appearance to represent Nowak in connection with the CFTC's civil case against Nowak that arises out of substantially the same underlying conduct as this criminal case. *See* Attorney Appearance for Defendant Michael Thomas Nowak by David Meister, *Commodity Futures Trading Commission v. Gregg Smith & Michael Nowak*, 19-cv-6163, Dkt. No. 21 (N.D. Ill. Sept. 23, 2019) (Dow, J.). Currently pending before Judge Dow in that case is the United States' motion to stay the proceedings through the resolution of this criminal case, which motion has been briefed by the parties and submitted to the Court for its decision.

of the case, his duties were ministerial, he had no discretion in the matter, and he was not privy to any confidential information); *cf. United States v. Dorfman*, 542 F. Supp. 402, 404, 410 (N.D. Ill. 1982) (refusing to allow a former U.S. Attorney to represent a defendant in a criminal matter that had been under investigation while he was in office, *even though he had formally recused himself from the matter and had no knowledge of it*, because the appearance would violate the Code of Professional Responsibility that require lawyers to "avoid even the appearance of professional impropriety" (emphasis added)).

But this is a criminal case, and the CFTC is not the entity litigating here on behalf of the federal government. However, as discussed above, the relevant aspects of this case are sufficiently similar to the CFTC Silver Investigation, and courts have found former government lawyers to have disqualifying conflicts in analogous situations. For example, in *Villaspring*, a former Kentucky Assistant Attorney General was disqualified from representing Villaspring in a federal *civil* action because he had investigated the company as part of an earlier state *criminal* investigation that did not result in charges. *See* 2011 WL 5330790, at *4-*5. If the matters are sufficiently similar, the fact that a different government agency is involved in the later matter does not change the conflict calculus under Rule 1.11(a)(2).

Further, although this case involves allegations that were not part of the CFTC Silver Investigation (*e.g.*, manipulative trading around barrier options), courts have still disqualified former government attorneys even where two matters do not

-19-

perfectly overlap, such that one matter relates to, or is a smaller sub-set of, the other matter. *See, e.g., United States v. Philip Morris, Inc.*, 312 F. Supp. 2d 27, 44-45 (D.D.C. 2004) (disqualifying former DOJ lawyer from representing a tobacco company because the lawyer had worked more than 382 hours on related tobacco-industry litigation while at the DOJ and had "sustained access to many confidential and privileged government documents" that could be of use to him in representing his current client); *Vigman*, 587 F. Supp. at 1366 (finding two former SEC lawyers were representing private plaintiffs "in connection with a matter" they had participated in while SEC lawyers because the "discrete series of transactions involving a specific situation and specific parties in the [SEC] civil action is part and parcel of a subsequent, broader allegation of widespread securities and racketeering in the case at bench"). In such cases, courts have noted that the former government lawyer's work involved the same general subject matter in comparable cases from which the lawyer would gain insight into government's strategy, which would be useful to apply in the later case they were involved with after leaving the government. This criminal case and the CFTC Silver Investigation share common ground in terms of the substantive conduct being investigated, and the fact that each may have had additional types of conduct within their purview does not undermine that Meister may have a conflict arising from that shared common ground.

Finally, courts have found disqualifying conflicts even where the cases were different, but "the scope of the representation in the first matter included advice on subjects highly relevant to the second matter." *Green*, 2011 WL 2419864, at *1-*2

(disqualifying two former New York City Law Department attorneys from a case challenging the lawfulness of the City's strip-search policy because the attorneys had previously represented the City and its employees in another lawsuit challenging the lawfulness of strip searches during which the attorneys "acquired confidential information on how strip-searches of detainees and others work in actual practice" and reviewed other information, such as "training materials and policy statements that may become central" in the case); *see also Porter v. Bd. of Educ. for the City of Chicago, District 299*, No. 92 C 0533, 1992 WL 166570, at *3-*4 (N.D. Ill. July 9, 1992) (disqualifying former Board of Education attorney who brought a suit on behalf of teachers contesting the board's disciplinary procedures because the attorney was previously "involved in comparable cases in which she would have been privy to the Board's strategic thinking on these matters"); *Dugar v. Bd. of Educ. of the City of Chicago, Dist. 299*, No. 92 C 1621, 1992 WL 142302, at *5 (N.D. Ill. June 18, 1992) (disqualifying former Board of Education attorney who sought to represent students in a case against the board that challenged the board's suspension and expulsion policies because of her "personal and substantial involvement in expulsion matters while a Board attorney").

-21-

**B. Meister May Have Acquired Confidential CFTC Information as the CFTC Enforcement Director and Thus May Be Conflicted from Representing Nowak in this Criminal Case in Which the Confidential Information Could Be Used to the Material Disadvantage of CFTC**

Even if the Court ultimately concludes that Meister is not conflicted under Rule 1.11(a)(2), Meister also may have a conflict under Rule 1.11(c), which prohibits a "lawyer having information that the lawyer knows is confidential government information about a person, acquired when the lawyer was a public officer or employee" from "represent[ing] a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person." *Id.*

Notably, the source of the confidential government information is not tied to a specific "matter"—unlike the analysis in Rule 1.11(a)(2) discussed above—because Rule 1.11(c) "protects information obtained while working for the government to the same extent as information learned while representing a private client," meaning that the "information may not be used or revealed to the government's disadvantage." Meister may have received confidential CFTC information about the CFTC Silver Investigation because he had supervisory responsibility for the high-profile investigation from January to March 2011, during which time he received briefings from staff, emails, and memoranda about the investigation. Therefore, even if this case and the CFTC Silver Investigation are *not* sufficiently related for purposes of the Rule 1.11(a)(2) analysis, there may be an independent basis for finding a conflict under Rule 1.11(c). *See In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-md-2804,

-22-

2019 WL 1274555, at *3-*5 (N.D. Ohio March 20, 2019) (concluding that disqualification was not required under Rule 1.11(a) because "the Opioid Task Force and the Opioid Multidistrict Litigation are not the same matter" but determining disqualification was necessary under Rule 1.11(c) because the former government lawyer had received "confidential non-public information [that] may go to the heart of [the opposing parties'] damages claims").

Rule 1.11(c)'s application to this case comes into focus when considering "the purpose and effect of the prohibitions contained in Rule 1.11(c) are to prevent the private client of a law firm with which the former public officer or official is associated from obtaining an unfair advantage by using the lawyer's confidential government information about the private client's adversary."  Rule 1.11 cmt. 4A.  The Superseding Indictment alleges that Nowak and Jordan knowingly and intentionally gave false answers to questions from a CFTC employee during their sworn depositions as part of the CFTC Silver Investigation.  (*See* Superseding Indictment ¶¶ 40-41.)  These statements are alleged to be material misrepresentations made in furtherance of the charged conspiracies, as well as the substantive fraud charges against Nowak—bank fraud, wire fraud affecting a financial institution, and commodities fraud (*id.* ¶¶ 60-61, 66-67, 72-73)—and Jordan—bank fraud and wire fraud affecting a financial institution (*id.* ¶¶ 62-63, 68-69).  *See* "18 U.S.C. §§ 1341 & 1343 Definition of Material," Pattern Criminal Jury Instructions of the Seventh Circuit (2012 ed.) Cmte. Cmt. ("[M]ateriality is an essential element of mail/wire fraud.").  At trial, the government expects to offer testimony from a CFTC witness on

-23-

the issue of the materiality of Nowak's and Jordan's misstatements, including how truthful answers would have been capable of influencing the direction of the CFTC's investigation. *See id.* ("A false or fraudulent . . . representation . . . is 'material' if it is capable of influencing the decision of the person to whom it was addressed."). It is the government's understanding that Meister supervised all of the CFTC employees who were present at Nowak's and Jordan's interviews, including with respect to the CFTC's Silver Investigation. He thus may be in a position to cross-examine his former subordinates at the CFTC about his current client's alleged misstatements to the CFTC during an investigation he oversaw while the CFTC Enforcement Director, all informed by his insight drawn from the CFTC's confidential information. *See United States v. Basham*, 918 F. Supp. 2d 787, 796 (C.D. Ill. 2013) ("[W]hen a former client becomes a Government witness against the attorney's new client, courts have been primarily troubled by the prospect of an attorney being torn between his duty of confidentiality to his former client and his duty of loyalty to his new client.").[8] Even if Meister does not personally cross-examine a CFTC witness at trial (*i.e.*, if one of Meister's co-counsel performs this role), his role during trial preparations and his presence at counsel's table raises the same concerns.

---

[8] Even outside the context of a former government lawyer, courts express concerns when a lawyer cross-examines a former client. *See Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) ("We have held that an attorney's prior representation of another client leads to an actual conflict when the attorney faces the possibility of having to cross-examine his former client."); *Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir. 1995) ("A corollary danger is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information.").

-24-

The decision in *Villaspring*, discussed above, is again instructive. In that case, the court disqualified a former Kentucky Assistant Attorney General from representing the defendant in a federal civil suit because he had investigated the defendant's conduct at issue in the suit as part of a state criminal investigation. *See* 2011 WL 5330790, at *6. The court found that the former Assistant Attorney General had acquired "confidential government information" as part of the state investigation, including "in the form of strategic insights, such as his knowledge of the strengths and weaknesses of the evidence compiled" against his current client. *Id.* The court, therefore, disqualified the attorney under Rule 1.11(c)[9] because he had "acquired 'confidential government information' in his role as a public attorney" and therefore "may not now use that information to benefit his client, Villaspring, to the 'material disadvantage' of the United States." *Id.* Meister may well be in the same position in this case—possessing confidential CFTC information that he could use against a CFTC witness—and therefore the reasoning from *Villaspring* would apply here.

---

[9] The court in *Villaspring* applied Rule 1.11(c) from the Kentucky Rules of Professional Conduct, which is substantially the same as Rule 1.11(c) in the New York Rules.

### C. If the Court Concludes that Meister Has a Conflict but Disqualification is Not Required, the Court Should Obtain Nowak's Informed Consent Waiving Any Conflicts of Interest Presented by Meister's Representation

In the event the Court agrees with the government that Meister has a conflict but concludes that disqualification is not required, the government respectfully requests that the Court obtain from Nowak a knowing and voluntary waiver of conflict-free representation along the lines of procedures that other courts have followed. *See, e.g., United States v. Curcio*, 680 F.2d 881, 888-89 (2d Cir. 1982); *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975); *United States v. Mers*, 701 F.2d 1321, 1325 (11th Cir. 1983). Meister may have relevant confidential information obtained during his time at the CFTC that his duty of confidentiality to the CFTC now prohibits him from using in his representation of Nowak. Potentially, Meister's representation of Nowak might be subject to attack as deficient if Meister is unable to use or disclose useful, but confidential, information from his former client (the CFTC) that may assist his current client (Nowak) in his defense of this criminal case. *See* Rule 1.11(a)(1) (requiring former government lawyers to comply with Rule 1.9(c) that prohibits revealing confidential client information). Rule 1.7(a)(2) provides, as relevant here, that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." If Meister possesses confidential CFTC

information, therefore, it would present an actual—or at the very least potential—personal interest conflict under this rule.

Meister may still represent Nowak, however, if Nowak "gives informed consent, confirmed in writing," for Meister to continue to represent him despite the conflict. Rule 1.7(b). In this context, informed consent means "the agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives." Rule 1.0(j).[10]

As just one example of how this conflict may manifest itself, in other criminal cases involving similar underlying conduct (*i.e.*, charges under the Dodd-Frank anti-spoofing provision in connection with manipulation of the precious metals futures markets), defendants have sought to dismiss the indictments based, in part, on arguments that the Dodd-Frank anti-spoofing statute is unconstitutionally vague. In support of such arguments, the defendants have pointed to the CFTC's interpretive guidance regarding disruptive trading that Meister was closely involved in drafting. *See, e.g.*, Memorandum of Law in Support of Defendant John Pacilio's Motion to Dismiss the Indictment, at 15, *United States v. Bases, et al.*, 18-cr-48, Dkt. No. 118

---

[10]    Informed consent is "confirmed in writing" when there is "(i) a writing from the person to the lawyer confirming that the person has given consent, (ii) a writing that the lawyer promptly transmits to the person confirming the person's oral consent, or (iii) a statement by the person made on the record of any proceeding before a tribunal." Rule 1.0(e).

(N.D. Ill. Nov. 16, 2018) (Sullivan Decl. Ex. K) (arguing the anti-spoofing statute was unconstitutionally vague, claiming "the CFTC felt compelled to clarify the term 'spoofing' through a formal rulemaking procedure," and that after taking more than two and a half years to issue guidance, "the CFTC was unable to provide a concrete definition for the term and did not characterize it as fraudulent"); Memorandum of Law in Support of Defendant's Motion to Dismiss the Superseding Indictment or, in the Alternative, to Strike Prejudicial Surplusage, at 24-25, *United States v. Flotron*, 17-cr-220, Dkt. No. 67 (D. Conn. Feb. 6, 2018) (Sullivan Decl. Ex. L) (arguing that the "CFTC's interpretive guidance does not rectify the vagueness of the anti-spoofing provision," and that "the final CFTC guidance does not make clear to a reasonable market participant in [defendant]'s position that the charged conduct would be considered illegal"). Whether Meister makes this same argument, and discusses how the CFTC's guidance does or does not factor into a vagueness analysis, this could pose a conflict where Meister would be unable to use any confidential information he has about the very guidance he helped draft for the CFTC that is now the basis for an argument in Nowak's motion to dismiss (*e.g.*, why it took more than two and a half years to issue guidance, or the CFTC's own views on the potential vagueness of the anti-spoofing provision).

The government does not claim to know the extent of any confidential information belonging to the CFTC that Meister may possess, or to have identified all of the potential ways that a conflict may arise between Meister and Nowak based on Meister's prior work at the CFTC. *See Wheat*, 486 U.S. at 162-63 ("The likelihood

and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials."). Nonetheless, the government believes that a thorough examination of Nowak by the Court regarding the actual and potential conflicts should put Nowak in a position to provide his informed consent and waive those conflicts.[11] Addressing these issues is important because apparent conflicts of interest that go unaddressed may leave any ultimate conviction in this case susceptible to challenges on appeal or through collateral attack. *See, e.g.*, First Amended Motion to Vacate or Set Aside Judgment and Sentence Under 18 U.S.C. ¶ 2255 With Supporting Memorandum of Law, at 5, *United States v. Michael Coscia*, 19-cv-5003, Dkt. No. 5 (N.D. Ill. Aug. 5, 2019) ("Counsel had an actual conflict of interest, unknown to Mr. Coscia, and it affected counsel's performance at trial.").[12]

---

[11]    Even if Nowak provides such a waiver, the Court still has "substantial latitude" to refuse a waiver of conflicts of interest "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.

[12]    In denying Coscia's 2255 petition, Judge Leinenweber found evidence that Coscia's defense counsel "was actively engaged in providing legal services to ICE [a government trial witness] at the time of the trial," but concluding that "the evidence establishing the conflict of interest fails to demonstrate that this joint representation 'adversely affected' his lawyer's performance." Memorandum Opinion and Order, *Coscia*, 19-cv-5003, Dkt. No. 15 (N.D. Ill. Dec. 12, 2019). Nonetheless, Judge Leinenweber granted Coscia's motion for a certificate of appealability for the denial of his 2255 motion "because Coscia has made a substantial showing of a denial of a Constitutional right" and the "issue on appeal is whether Coscia's Sixth Amendment right to the effective assistance of counsel was violated." Minute Entry, *Coscia*, 19-cv-5003, Dkt. No. 19 (N.D. Ill. Dec. 19, 2019).

A defendant can waive the right to conflict-free counsel and, "once having made a knowing and intelligent waiver, a criminal defendant may not later attack his conviction premised upon an assertion of conflict." *United States v. Beniach*, 825 F.2d 1207, 1210 (7th Cir. 1987). A waiver is said to be knowing and intelligent if made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The key question is whether the defendant knew enough to make the choice an informed one—a rational reconciliation of risks and gains that are in the main understood." *United States v. Adkins*, 274 F.3d 444, 453 (7th Cir. 2001) (quotations omitted).[13] In the process of determining whether a defendant's waiver of his right to conflict-free counsel is knowing and intelligent, a court typically:

> (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

---

[13] For example, to ensure a defendant has made a knowing and intelligent waiver, "the district court should: (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel." *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019) (quotation omitted).

*United States v. Perez*, 325 F.3d 115, 119 (2d Cir. 2003). For these reasons, the government respectfully submits that the Court conduct a colloquy on the record with Nowak to ensure that he has provided his informed consent and a knowing and intelligent waiver of any conflicts presented by Meister's representation of him in this case.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court hold a hearing to determine whether Meister has a conflict in this matter and, if so, to fashion remedial measures in order to protect Nowak's rights and these proceedings.[14]

Dated: January 10, 2020

Respectfully submitted,

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
U.S. Department of Justice


By:      */s/ Matthew F. Sullivan*
Matthew F. Sullivan, Trial Attorney
Avi Perry, Assistant Chief
1400 New York Avenue, N.W.
Washington, D.C. 20530
matthew.sullivan2@usdoj.gov/(202) 353-6200
avi.perry@usdoj.gov/(202) 616-4619

---

[14] If the Court concludes that Meister has a conflict, the conflict is imputed to Meister's firm, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), and Skadden would be required to take certain remedial steps to address the imputed conflict. *See* Rule 1.11(b).

## **CERTIFICATE OF SERVICE**

I, Matthew F. Sullivan, hereby certify that on January 10, 2020, I caused the foregoing Brief in Support of the United States' Motion for a Hearing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

 /s/*Matthew F. Sullivan*

Matthew F. Sullivan