**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA

      v.

GREGG SMITH,
MICHAEL NOWAK,
JEFFREY RUFFO, and
CHRISTOPHER JORDAN,

               Defendants.

Case No. 19 CR 669

Hon. Edmond E. Chang

**MICHAEL NOWAK'S RESPONSE TO THE
<u>UNITED STATES' MOTION FOR A HEARING</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.      STATEMENT OF FACTS ......................................................................................4

     A.      The CFTC Silver Investigation............................................................4

     B.      The CFTC and DOJ Spoofing Investigations.......................................8

     C.      The DOJ Raised a Possible Conflict Nearly One Year After Learning of Mr. Meister's Representation of Mr. Nowak .......................................9

III.      LEGAL FRAMEWORK .......................................................................................10

     A.      An Evidentiary Hearing Is Not Required ............................................10

     B.      The Sixth Amendment Creates a Presumption in Favor of a Criminal Defendant's Counsel of Choice ..........................................................10

     C.      Disqualification Is a Measure of Last Resort, Particularly in Criminal Cases ................................................................................................11

     D.      Applicable Rules of Professional Conduct..........................................12

IV.      ARGUMENT .......................................................................................................13

     A.      Mr. Meister's Representation of Mr. Nowak Does Not Violate Rule 1.11(a)(2)...........................................................................................13

     B.      Rule 1.11(c) Does Not Apply to Information About the Former Government Client....................................................................................28

     C.      Any Confidential CFTC Information Mr. Meister Has Is Protected by Rule 1.11(a)(1), Which Requires Compliance with Rule 1.9(c)...................................31

     D.      No Other Potential Conflict Exists with Respect to Cross-Examination of a CFTC Witness ...............................................................................33

     E.      If the Court Concludes That a Conflict or Potential Conflict Exists, the Court Should Employ a Remedy Short of Disqualification to Protect Mr. Nowak's Rights ...............................................................................34

     F.      Mr. Nowak Has Provided a Knowing and Voluntary Waiver of Any Conflicts of Interest Presented by Mr. Meister's Prior Government Service .......36

V.      CONCLUSION ...................................................................................................38

# TABLE OF AUTHORITIES

## CASES

*alfaCTP Systems, Inc. v. Nierman*,
  No. 15-CV-9338, 2016 WL 687281 (N.D. Ill. Feb. 19, 2016) .......................................11

*Arroyo v. City of Buffalo*,
  15-CV-753, 2017 WL 3085835 (W.D.N.Y. July 20, 2017) .....................................24, 35

*Bartlett v. Bartlett*,
  No. 16 CV 6595, 2016 WL 7374276 (N.D. Ill. Dec. 20, 2016)......................................27

*Brady v. United States*,
  397 U.S. 742 (1970) .......................................................................................................37

*Castelino v. Rose-Hulman Institute of Technology*,
  No. 2:17-CV-139-WTL-MJD, 2017 WL 6523410 (S.D. Ind. Dec. 21, 2017) ................35

*City of Chicago v. Purdue Pharma L.P.*,
  2014 WL 7146362 (N.D. Ill. Dec. 15, 2014) ..................................................... 12, 23, 24

*Commonwealth Insurance Co. v. Stone Container Corp.*, No. 99 C,
  8471, 2002 WL 385559 (N.D. Ill. Mar. 12, 2002) .........................................................32

*Dugar v. Board of Education of the City of Chicago, District 299*,
  No. 92 C 1621, 1992 WL 142302 (N.D. Ill. June 18, 1992) .....................................21, 22

*Ferncliff Cemetery Ass'n v. Town of Greenburgh, New York*,
  No. 18-CV-6411 (CS), 2019 WL 6878560 (S.D.N.Y. Dec. 17, 2019) ...........................18

*Flego v. Philips, Appel & Walden, Inc.*,
  514 F. Supp. 1178 (D.N.J. 1981)....................................................................................18

*Freeman v. Chicago Musical Instrument Co.*,
  689 F.2d 715 (7th Cir. 1982).....................................................................................11, 26

*Gomez v. Ahitow*,
  29 F.3d 1128 (7th Cir. 1994)...........................................................................................37

*Guillen v. City of Chicago*,
  956 F. Supp. 1416 (N.D. Ill. 1997)..................................................................................11

*Hernandez v. Helm*,
  No. 18 C 7647, 2019 WL 5922233 (N.D. Ill. Nov. 12, 2019) .........................................13

*Kadish v. C.F.T.C.*,
  548 F. Supp. 1030 (N.D. Ill. 1982)..................................................................................25

*Kessenich v. C.F.T.C.*,
  684 F.2d 88 (D.C. Cir. 1982) ......................................................................................26

*Kovacevic v. Fair Automotive Repair, Inc.*,
  641 F. Supp. 237 (N.D. Ill. 1986)...........................................................................21, 24

*Laker Airways Ltd. v. Pan American World Airways*,
  103 F.R.D. 22 (D.D.C. 1984) .....................................................................................15

*Lofton v. Brown & Williamson Tobacco Corp.*,
  No. 90 C, 5796, 1992 WL 3731 (N.D. Ill. Jan. 7, 1992) ................................................24

*Luis v. United States*,
  136 S.Ct. 1083 (2016)..................................................................................................10

*Martley v. City of Basehor, Kansas*,
  No. 19-02138-DDC-GEB, 2019 WL 6340132 (D. Kan. Nov. 27, 2019)........................21

*In re National Century Financial Enterprises, Inc. Financial Investment Litigation*,
  No. 2:03-md-1565, 2010 WL 1257598 (S.D. Ohio Mar. 29, 2010)................................35

*In re National Prescription Opiate Litigation*,
  No. 1:17-MD-2804, 2019 WL 1274555 (N.D. Ohio Mar. 20, 2019).................. 17, 21, 29

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
  No. MDL 05-1720 JG JO, 2006 WL 6846702 (E.D.N.Y. Aug. 7, 2006) ........................15

*Pennington v. Metropolitan Government of Nashville & Davidson County, Tennessee*,
  No. 3:05-1075, 2006 WL 8445756 (M.D. Tenn. May 2, 2006)......................................31

*Porter v. Board of Education for the City of Chicago, District 299*,
  No. 92 C 0533, 1992 WL 166570 (N.D. Ill. July 9, 1992) .......................................21, 22

*Powell v. Alabama*,
  287 U.S. 45 (1932) ......................................................................................................10

*Sailsbery v. Village of Sauk Village*,
  No. 15 C 10564, 2016 WL 1402291 (N.D. Ill. Apr. 11, 2016).......................................33

*Securities Investor Protection Corp. v. Vigman*,
  587 F. Supp. 1358 (C.D. Cal. 1984)............................................................................19

*In re Sofaer*,
  728 A.2d 625 (D.C. Ct. App. 1999) .........................................................................21, 23, 24

*Tomasian v. C.D. Peacock, Inc.*,
  No. 09 C 5665, 2012 WL 2590493 (N.D. Ill. July 3, 2012) ...........................................14

*Twin Laboratories, Inc. v. Weider Health & Fitness*,
No. 89 CIV. 0949 (MBM), 1989 WL 49368 (S.D.N.Y. May 4, 1989) ............................15

*United States v. Anderson*,
288 F.3d 335 (7th Cir. 2002) ...........................................................................................10

*United States v. Cellini*,
596 F. Supp. 2d 1194 (N.D. Ill. 2009) ..............................................................................35

*United States v. Dancy*,
No. 3:08CR189, 2008 WL 4329414 (E.D. Va. Sept. 16, 2008) ......................................27

*United States v. Dorfman*,
542 F.Supp. 402 (N.D. Ill. 1982) .....................................................................................27

*United States v. Flores*,
5 F.3d 1070 (7th Cir. 1993) ........................................................................................10, 36

*United States v. Floyd*,
No. 87 CR 913, 1988 WL 23832 (N.D. Ill. Mar. 8, 1988) ..............................................38

*United States v. Gearhart*,
576 F.3d 459 (7th Cir. 2009) ...........................................................................................11

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) .........................................................................................10, 11, 34

*United States v. Goot*,
894 F.2d 231 (7th Cir. 1990) ...........................................................................................10

*United States v. Jeffers*,
520 F.2d 1256 (7th Cir. 1975) .........................................................................................32

*United States v. Josten*,
No. 88 CR 644, 1989 WL 112310 (N.D. Ill. Sept. 14, 1989) ....................................23, 24

*United States v. Messino*,
181 F.3d 826 (7th Cir. 1999) ......................................................................................11, 34

*United States v. O'Malley*,
786 F.2d 786 (7th Cir. 1986) .............................................................................4, 11, 12 34

*United States v. Rasco*,
No. CR408-100, 2009 WL 1873804 (S.D. Ga. June 29, 2009) .......................................28

*United States v. Roth*,
860 F.2d 1382 (7th Cir. 1988) .........................................................................................37

iv

*United States v. Turner*,
594 F.3d 946 (7th Cir. 2010) ............................................................................ 11

*United States v. Villaspring Health Care Center, Inc.*,
No. CIV.A. 3:11-43-DCR, 2011 WL 5330790 (E.D. Ky. Nov. 7, 2011) .................. 20, 30

*Watkins v. Trans Union, LLC*,
869 F.3d 514 (7th Cir. 2017) ............................................................................ 21

## RULES

N.D. Ill. R. 83.50 .......................................................................................... 12, 13

ABA Model Rule of Professional Conduct 1.0 ........................................................ 37

ABA Model Rule of Professional Conduct 1.11 ............................................... *passim*

ABA Model Rule of Professional Conduct 1.7 .................................................. 36, 37

ABA Model Rule of Professional Conduct 1.13 ...................................................... 34

N.Y. Rule of Professional Conduct 8.5 ................................................................. 12

N.Y. Rule of Professional Conduct 1.11 ....................................................... *passim*

## OTHER AUTHORITIES

ABA Formal Op. 97-409 ....................................................................................... 29

ABA Formal Op. 342 ...................................................................................... 14, 24

Simon's N.Y. Rules of Prof. Conduct § 1.11:28 ................................................... 31

Michael Nowak respectfully submits this memorandum of law in response to the motion by the Department of Justice ("DOJ") for a hearing to determine whether David Meister, Mr. Nowak's counsel of choice, has a conflict in this case, and, if so, to take appropriate measures to protect Mr. Nowak's Sixth Amendment rights and the integrity of these proceedings (Brief in Support of the United States' Motion for a Hearing (the "Motion" or "Mot.").) (ECF No. 78.) For the reasons discussed below, the facts proffered by the DOJ and of which Mr. Meister is aware create, at most, a potential conflict, which Mr. Nowak, in consultation with his independent counsel, has knowingly and voluntarily waived. While we do not believe an evidentiary hearing is required for the Court to resolve the issues raised by the DOJ, we do not oppose a hearing. The attached declaration of ethics expert Prof. Bruce Green of the Fordham University School of Law, whom we have retained to advise on these issues, supports our view. (Declaration of Bruce A. Green in Support of Michael Nowak's Response to the United States' Motion for a Hearing, dated Feb. 10, 2020 (Green Decl. (Ex. A)).)

## I.    INTRODUCTION

Fourteen months after becoming aware that Mr. Nowak retained Mr. Meister as counsel in connection with the DOJ investigation that led to Mr. Nowak's indictment in 2019,[1] the DOJ asks this Court to hold a hearing to determine whether Mr. Meister has a conflict. (Mot. at 1.) The DOJ does not seek disqualification; it seeks a hearing on the question whether Mr. Meister's representation of Mr. Nowak poses a conflict in light of applicable rules of professional conduct concerning prior government service, and requests that if the Court determines that there is a

---

[1]    The instant Indictment was first unsealed in September 2019 (ECF No. 1) and superseded in November 2019 (ECF No. 52). The Superseding Indictment is referred to herein as the "Indictment" or "Indict."

conflict and that disqualification is not required, the Court obtain a knowing and voluntary waiver from Mr. Nowak. (Mot. at 26.)

Mr. Meister served as Director of Enforcement of the Commodities Futures Trading Commission ("CFTC") from January 3, 2011, through October 2013. The DOJ claims Mr. Meister may be prevented from representing Mr. Nowak in this case, principally because, for a brief period at the start of his tenure as Director, he had supervisory responsibility for a CFTC investigation (the "CFTC Silver Investigation") that the DOJ contends is "sufficiently related" to the conduct charged here to raise a potential concern under the ethical rules. (Mot. at 11–12.) The DOJ is incorrect.

As publicly described, the five-year CFTC Silver Investigation focused on complaints of long-term suppression of prices of silver futures—conduct unrelated to the alleged spoofing that is the basis for the Indictment. That investigation began in 2008, before Mr. Meister joined the CFTC, and was closed without his involvement, and without charges, in late 2013. Mr. Meister had oversight for a brief period in early 2011, before he recused from the investigation for reasons unrelated to the issues here. A number of years thereafter, the CFTC began a different investigation, focused on spoofing, which led to its September 2019 civil complaint against Mr. Nowak. *See* Complaint, *C.F.T.C. v. Nowak*, No. 19-cv-6163, ECF No. 1 (N.D. Ill. Sept. 16, 2019) (Dow, J.). The CFTC, which has been aware for at least a year of Mr. Meister's representation of Mr. Nowak, has never raised a concern about potential conflicts, either in its own case or in this one.

The applicable ethical rule prohibits a former government attorney from representing a client in the same matter on which the attorney participated personally and substantially while in the government. Here, the investigations at issue were handled by different agencies, and

publicly available information and the DOJ's assertions in its Motion make clear that the CFTC Silver Investigation is *not* the same, in form or substance, as this criminal case. The only cognizable link between the two appears to be the DOJ's intention to offer in evidence at trial (i) brief, discrete portions of Mr. Nowak's and co-defendant Christopher Jordan's testimonies from the CFTC Silver Investigation, and (ii) a CFTC witness purportedly to establish the significance of that testimony to that investigation. Assuming for this discussion that such evidence is admissible, that connection is insufficient under the applicable ethical rules to create a conflict that could prevent Mr. Meister from representing Mr. Nowak.

Even if these two matters were the same, the ethical rules do not require disqualification unless Mr. Meister's participation in the CFTC Silver Investigation was personal and substantial. The DOJ's Motion does not establish that level of involvement. Mr. Meister—who, in light of CFTC rules and Section 8(a) of the Commodity Exchange Act relating to confidentiality of investigations, has not disclosed to anyone any information relating to the CFTC Silver Investigation that may be confidential—is submitting herewith a Declaration setting forth, to the extent permissible, his recollection of the CFTC Silver Investigation, which supports his view that his participation was not personal and substantial. (Declaration of David Meister in Support of Michael Nowak's Response to the United States' Motion for a Hearing, dated Feb. 10, 2020 (Meister Decl. (Ex. B)) at ¶¶ 6, 7, 12.)

Finally, with respect to his ongoing duty of confidentiality to the CFTC, Mr. Meister does not believe he has any confidential CFTC information that could be used to defend Mr. Nowak in this case or in the pending CFTC civil case. (Meister Decl. (Ex. B) at ¶ 13.) In any event, Mr. Meister's duty of confidentiality to the CFTC under the applicable ethical rules creates, at most, a potential conflict that can be waived by Mr. Nowak. (Green Decl. (Ex. A) at ¶ 37.) Should the

Court require further fact-finding, Mr. Meister is prepared to address *in camera* any questions the Court may have about his government service and his related duties of confidentiality, including with respect to the CFTC Silver Investigation.

Given that the DOJ has raised the possibility of a conflict, we have—in an effort to proceed with appropriate caution so as to ensure that Mr. Nowak's constitutional right to counsel is protected—referred Mr. Nowak to independent counsel, Andrew Porter of Salvatore, Prescott, Porter & Porter, to advise him on this issue. We understand that Mr. Nowak has waived any actual or potential conflicts in writing, and that Mr. Porter is of the view that Mr. Nowak's waiver is knowing, intelligent, and voluntary. (Declaration of Andrew C. Porter in Support of Michael Nowak's Response to the United States' Motion for a Hearing, dated Feb. 10, 2020. (Porter Decl. (Ex. C)) at ¶ 8.)

While we do not believe a hearing is required to further develop the factual record on the issue of whether a conflict exists, we do not oppose a hearing, and the Court has discretion to hold one. *See United States v. O'Malley,* 786 F.2d 786, 793 (7th Cir. 1986). Nor do we oppose the Court inquiring of Mr. Nowak directly to assure itself that Mr. Nowak's waiver is knowing and voluntary.

## II.     STATEMENT OF FACTS

### A.     The CFTC Silver Investigation

In May 2008, the CFTC issued a report on complaints it had received for more than two decades regarding suspected manipulation in the silver futures market. (CFTC Division of Market Oversight, *Report on Large Short Trader Activity in the Silver Futures Market* (May 13, 2008) (DMO Report (Ex. D)).) The report noted investors' complaints that "large short traders in the [silver] futures market ha[d] successfully depressed prices for more than 25 years." (*Id.* at

5.)  The report explained that silver commentators and investors had recently reasserted allegations of long-term manipulation by traders on the short side of the silver futures market. (*Id.* at 1.)  In September 2008, the CFTC confirmed that its Division of Enforcement was investigating complaints of manipulation in the silver market.  (*CFTC Closes Investigation Concerning the Silver Markets*, CFTC Release No. 6709-13 (Sept. 25, 2013) (2013 CFTC Press Release (Sullivan Decl. Ex. B)) at 1.)  In a press release announcing the close of the investigation, the CFTC described the complaints that were investigated:

> These complaints were focused on whether the silver futures contracts traded on the Commodity Exchange, Inc. (COMEX) were being manipulated.  For example, the complaints pointed to differences between prices in the silver futures contracts and prices in other silver products, including retail silver products.  The complaints generally asserted that because the prices for retail silver products, such as coins and bullion, had increased, the price of silver futures contracts should have also experienced an increase.  By reference to publicly available information concerning large traders with short open positions in the silver futures contracts, the complaints also alleged that the large shorts in the silver market were responsible for lower futures prices.

(*Id.*)

In short, as publicly described, the CFTC Silver Investigation focused at least primarily on whether traders held large short open positions to effect a long-term manipulation to suppress silver futures prices.  The Indictment, in contrast, is premised on allegations of a manipulation scheme to momentarily move market prices for futures contracts by small amounts—upward, in many cases—by placing short-lived bids and offers for various precious-metals contracts (in gold, silver, platinum, and palladium), with the intent to cancel those bids and offers before execution.  (*See* Indict. at ¶¶ 26, 30–32.)

The CFTC interviewed dozens of individuals in the course of the CFTC Silver Investigation.  (*CFTC Statement Regarding Enforcement Investigation of Silver Markets* (Nov. 4, 2011) (Ex. E).)  Among these individuals were Messrs. Nowak and Jordan, as well as former

JPMorgan trader Robert Gottlieb, each of whom testified voluntarily for two days in August–September 2010.[2] The topics discussed included general trading strategies, the structure and operations of the JPMorgan precious metals trading desk, and the content of certain email and chat communications. Consistent with the public statements above, the CFTC attorneys spent significant time during these testimony sessions asking about the large short position in silver futures that JPMorgan held as a result of its 2008 acquisition of Bear Stearns.

Mr. Nowak's two-day testimony transcript is 451 pages and over 11,000 lines. Only just before the second-day session ended did the CFTC ask Mr. Nowak a few questions about placing and canceling orders. In particular, the CFTC attorneys asked whether he was aware of "traders at JPMorgan in the metals group placing bids and offers in the market that they did not intend to execute; and pulling those bids and offers before they got hit or lifted." Mr. Nowak responded, "No."[3] The Indictment quotes that testimony, and the DOJ intends to offer it at trial, as well as a CFTC witness purportedly to establish the significance of the testimony to the CFTC Silver Investigation. (Mot. at 23–24.)

On January 3, 2011, a few months after Mr. Nowak's August 2010 testimony, Mr. Meister was sworn in as the CFTC Director of Enforcement. (Meister Decl. (Ex. B) at ¶ 3.) In that role, he had nominal supervisory responsibility for all CFTC Enforcement Division investigations, including the CFTC Silver Investigation.[4] (Id. at ¶ 4.) According to a letter from

---

2   The transcripts, produced in discovery in this case, reflect that the investigation was named "In Re Silver Prices." CFTC Testimony of Michael Nowak (Aug. 3–4, 2010) (DOJ-0019995538–5633; DOJ-0019995687–5765); CFTC Testimony of Robert A. Gottlieb (Aug. 17–18, 2010) (DOJ-0019995944–6043; DOJ-0019996075–6170); CFTC Testimony of Christopher Jordan (Sept. 15–16, 2010) (DOJ-0008238874–8970; DOJ-0008239163–9228).

3   Mr. Jordan's testimony in the CFTC Silver Investigation comprises 426 pages, containing almost 9,000 lines. Here too, the CFTC asked only a few questions related to order placement and cancellation. Mr. Gottlieb was not questioned about such conduct at all.

4   During fiscal years 2010 and 2011, the CFTC opened more than 800 new investigations, including more than 450 new investigations in 2011. See CFTC President's Budget and Performance Plan Fiscal Year 2013 (Feb. 2012) (Ex. F) at 20, 42).

the CFTC to the DOJ, Mr. Meister received briefings, e-mails and memoranda about the CFTC

Silver investigation from January 2011 until March 2011, when Mr. Meister recused from the

investigation. (Oct. 21, 2019 Letter from David Newman to Avi Perry (Newman Letter

(Sullivan Decl. Ex. D) at 1.)) The DOJ does not appear to have any further information about

the content of those communications. Mr. Meister does not recall receiving or reviewing e-mails

or memoranda about the CFTC Silver Investigation. (Meister Decl. (Ex. B) at ¶ 7.) He recalls

that prior to his recusal he spoke with others at the CFTC about the investigation on relatively

few occasions. (*Id.* at ¶ 6) He has a general recollection of the substance of some of these

discussions but does not recall the details, and he does not recall being told the names of any

witnesses or what they said in their testimony. (*Id.*)

On September 25, 2013, after at least five years of investigation that utilized more than

7,000 enforcement staff hours, the CFTC publicly announced the closure of the CFTC Silver

Investigation, because "[b]ased upon the law and evidence as they exist at this time, there is not a

viable basis to bring an enforcement action with respect to any firm or its employees related to

our investigation of silver markets." (2013 CFTC Press Release (Sullivan Decl. Ex. B) at 1.)

The CFTC explained that the staff "reviewed and analyzed position and transaction data,

including physical, swaps, options, and futures trading data, and other documents and

information, and interviewed witnesses." (*Id.*) Having recused, Mr. Meister was not involved in

the CFTC's decision to close the Silver Investigation. (Meister Decl. (Ex. B) at ¶ 6.)

In October 2013, Mr. Meister stepped down from his role as the CFTC Director of

Enforcement. (*Id.* at ¶ 3.)

**B.      The CFTC and DOJ Spoofing Investigations**

At some point prior to February 17, 2017, the CFTC opened an investigation titled

"JPMorgan Gregg Smith Spoofing" (the "CFTC Spoofing Investigation").[5]  On February 17,

2017—almost three and a half years after the closure of the CFTC Silver Investigation—Mr.

Smith (a co-defendant here) gave voluntary testimony to the CFTC in connection with that

investigation.  The CFTC Spoofing Investigation led to the civil complaint the CFTC brought

against Messrs. Nowak and Smith on September 16, 2019, which is premised on allegations of

spoofing substantially similar to the charges in the Indictment.  *See* Non-Party CFTC's Motion to

Quash Pretrial Rule 17 Subpoena *Duces Tecum*, ECF No. 87, at 2 (describing civil complaint as

arising out of CFTC's 2017 investigation into Gregg Smith).  Based on discovery to date, the

DOJ commenced a criminal investigation of suspected spoofing activity, which led to the

Indictment, in or before August 2018.

There is no indication in the DOJ's Motion, the public record, or discovery materials that

the current DOJ charges resulted from a referral from, or otherwise arose out of, the CFTC Silver

Investigation.  Indeed, during a telephone call on November 19, 2019, Fraud Section attorneys

Avi Perry and Matthew Sullivan confirmed they do not have the CFTC's investigative file for

the CFTC Silver Investigation, because they have not sought it via an access request.  (Meister

Decl. (Ex. B) at ¶ 10.)

The DOJ charges themselves suggest no relevant connection.  The Indictment is premised

almost entirely on allegations of spoofing in precious metals futures contracts (gold, silver,

---

[5]    Mr. Smith's transcript, bearing that matter title, was produced in discovery in this case.  CFTC Transcript of Gregg
Smith (Feb. 17, 2017) (DOJ-0008247552–7826).

platinum, and palladium).[6]  In each instance of alleged spoofing, the trader defendants allegedly placed so-called "genuine" orders on one side of the market and a larger "spoof" order on the other side of the market.  (Indict. at ¶¶ 4, 30, 31, 32.)  The spoof orders were allegedly intended to artificially move prices up or down, fraudulently inducing market participants to trade with the genuine orders.  These episodes are alleged to have taken a matter of seconds.  (Indict. at ¶¶ 30–32.)  This alleged conduct is plainly distinct from the publicly stated primary focus of the CFTC Silver Investigation—namely, whether there was a long-term manipulation scheme to suppress silver futures prices by means including holding large short open positions.  Realizing quick gains via fast entry and cancellation of orders would appear to be the opposite of holding large short positions for a long time to keep silver prices low.  It is therefore unsurprising that nowhere do the public statements concerning the CFTC Silver Investigation refer to quick order cancellations, and nowhere does the Indictment—or the parallel CFTC complaint—refer to holding open short positions for the purpose of keeping silver prices down.

## C. The DOJ Raised a Possible Conflict Nearly One Year After Learning of Mr. Meister's Representation of Mr. Nowak

In November 2018, Mr. Meister told the DOJ that he represented Mr. Nowak in the DOJ investigation.  (Meister Decl. (Ex. B) at ¶ 8.)  In February 2019, when CFTC staff reached out to Mr. Meister with respect to the CFTC Spoofing Investigation, they confirmed that the CFTC too was aware of the representation.  (*Id.* at ¶ 9.)  On October 21, 2019, the DOJ attorneys first informed Mr. Meister that they believed he might have a conflict arising from his previous service as Enforcement Director of the CFTC, but that they had not reached any conclusions.  (*Id.* at ¶ 10.)  Mr. Meister told the DOJ that he did not perceive a conflict.  (*Id.*)  The CFTC has

---

[6]  The Indictment contains one paragraph with vague allegations concerning barrier options, (Indict. at ¶ 27), which the DOJ concedes are unrelated to the CFTC Silver Investigation.  (Mot. at 19.)

never suggested to Mr. Meister that it perceives a conflict, with respect to either this case or the CFTC's pending civil case. (*Id.* at ¶ 11.)

## III. LEGAL FRAMEWORK

### A. An Evidentiary Hearing Is Not Required

In deciding whether a potential or actual conflict exists, the Court has discretion to hold an evidentiary hearing, but is not required to do so. *See United States v. Anderson*, 288 F.3d 335, 337–38 (7th Cir. 2002) (district court did not abuse discretion in denying hearing where allegations of a conflict were not sufficiently detailed or specific). Such a hearing may be "useful" but is not "always required." *United States v. Goot*, 894 F.2d 231, 237 (7th Cir. 1990) (denial of hearing on disqualification motion not an abuse of discretion where the issue was "well-briefed by both sides"). The question whether to hold a hearing generally turns on "the particular facts which attend a particular request." *Anderson*, 288 F.3d at 337 (quoting *United States v. Losing*, 539 F.2d 1174, 1178 (8th Cir. 1976)).

### B. The Sixth Amendment Creates a Presumption in Favor of a Criminal Defendant's Counsel of Choice

The Sixth Amendment protects a criminal defendant's right to a "fair opportunity to secure counsel of his choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The Supreme Court has described the "particular guarantee of fairness" provided by the right to counsel of choice as one of "the basic elements of a fair trial." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984)). Courts therefore must recognize a presumption in favor of a criminal defendant's choice of counsel. *United States v. Flores,* 5 F.3d 1070, 1078 (7th Cir. 1993). This presumption is critical, given "the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust." *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016). Erroneous deprivation

of a defendant's right to counsel of choice is a structural error that mandates vacating a conviction. *Gonzalez-Lopez*, 548 U.S. at 150.

## C. Disqualification Is a Measure of Last Resort, Particularly in Criminal Cases

While the Sixth Amendment presumption in favor of a defendant's ability to retain counsel of his choice can be overcome by an actual or serious potential conflict, *United States v. Turner*, 594 F.3d 946, 951 (7th Cir. 2010), the Seventh Circuit has recognized that disqualification of defense counsel, particularly in a criminal case, should be a "measure of last resort" and "the government bears a heavy burden of establishing that disqualification is justified." *United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009) (quoting *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986)).

In this Circuit, when considering whether counsel must be disqualified, courts conduct a two-step analysis, determining (1) whether there is an ethical violation and, if so, (2) whether disqualification is appropriate to remedy the violation. *Guillen v. City of Chicago,* 956 F. Supp. 1416, 1421 (N.D. Ill. 1997) (Grady, J.). Disqualification is not automatic, even in the event of an ethical violation. *alfaCTP Sys., Inc. v. Nierman*, No. 15-cv-9338, 2016 WL 687281, at *3 (N.D. Ill. Feb. 19, 2016) (St. Eve, J.). Rather, the Seventh Circuit has long cautioned that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982).

When considering disqualification in criminal cases, courts are required to evaluate "the interests of the defendant, the government, the witness and the public," *United States v. O'Malley*, 786 F.2d 786, 790 (7th Cir. 1986), and to use their "broad discretion to fashion remedies to avoid conflicts of interest" before concluding that disqualification is required. *United States v. Messino*, 181 F.3d 826, 830 (7th Cir. 1999). In describing the applicable

precedent, the DOJ relies principally on civil cases in which counsel was disqualified. However, under Seventh Circuit caselaw, not cited in the DOJ's motion, such cases are inapplicable to disqualification motions in criminal cases, where the defendant has a constitutional right to counsel of his choice. *See O'Malley*, 786 F.2d at 790 ("Given the weight of the defendant's constitutional right to the counsel of his choice . . . we refuse to apply to a criminal case the holdings in the civil cases cited above by the government.").

## D.      Applicable Rules of Professional Conduct

Mr. Meister is admitted to practice and has his principal office in the state of New York, and is therefore subject to the New York Rules of Professional Conduct (herein referred to as the "New York Rules" or cited as "N.Y. Rule __"). N.Y. Rule 8.5(a) (N.Y. Bar Ass'n 2018). The New York Rules provide, however, that where an attorney is admitted to a court for a particular proceeding, the attorney's conduct in that proceeding is governed by the rules of the jurisdiction in which that court sits. N.Y. Rule 8.5(b)(1). On September 27, 2019, the Court granted Mr. Meister's application to appear *pro hac vice* in this case (ECF No. 16), such that the Local Rules of the Northern District of Illinois apply. Under Local Rule 83.50, the American Bar Association Model Rules of Professional Conduct (herein referred to as the "Model Rules" or cited as "Rule __") are the applicable ethical rules, except where the Model Rules either do not address the matter at issue or are inconsistent with the Rules of Professional Conduct for the state in which the lawyer's principal office is located. N.D. Ill. R. 83.50.[7] The Model Rules implicated by the DOJ's Motion appear consistent, in all relevant respects, with the analogous

---

[7]   Where either exception applies, "a lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for the state in which the lawyer's principal office is located." N.D. Ill. R. 83.50.

New York Rules (Green Decl. (Ex. A) at ¶ 15), and the DOJ does not contend otherwise.[8]

Therefore, the Model Rules govern here. *See Hernandez v. Helm*, No. 18 C 7647, 2019 WL 5922233, at *2 (N.D. Ill. Nov. 12, 2019) (Schenkier, M.J.) (Model Rules governed where movant did not identify an inconsistency between Model Rules and relevant state rules, or establish that Model Rules failed to address an issue). Nonetheless, given the consistency between the Model Rules and the New York Rules, and the applicable precedent, the analysis and conclusions with respect to the issues raised in the DOJ's Motion are essentially the same, whether the New York Rules or the Model Rules apply.[9] (Green Decl. (Ex. A) at ¶ 15.)

## IV. ARGUMENT

### A. Mr. Meister's Representation of Mr. Nowak Does Not Violate Rule 1.11(a)(2)

*1. The CFTC Silver Investigation Is Not the Same Matter as the DOJ's Prosecution*

Rule 1.11(a) states, in relevant part, that "a lawyer who has formerly served as a public officer or employee of the government . . . (2) shall not otherwise represent a client in connection with *a matter* in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in

---

[8] The DOJ asserts that the New York Rules govern here solely on the basis that Mr. Meister is admitted to practice in New York and has his principal office there. (Mot. at 8.) The DOJ cites *City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2014 WL 7146362 (N.D. Ill. Dec. 15, 2014) (Bucklo, J.), in support of that assertion, but there the court applied the relevant state rules not solely due to the attorney's admission and principal office in that location, but because the relevant state rules conflicted with the Model Rules. *Id.* at *5 n.3. To the extent the Court finds there is a material inconsistency between the relevant New York Rules and Model Rules, the New York Rules would govern, pursuant to Local Rule 83.50.

[9] Professor Green bases his conclusions primarily on the New York Rules and authorities thereunder. (Green Decl. (Ex. A) at ¶ 15.) Professor Green notes that—because the New York Rules do not significantly differ from the Model Rules—his analysis would be the same if the Model Rules were applied. (*Id.*) The cases cited herein apply Model Rules, New York rules and in some cases the rules of professional conduct of states other than New York. The latter cases are offered as persuasive authority and guidance in interpreting the Model Rules, because they address the application of rules with the same or closely similar language. To the extent relevant to the interpretation of the currently applicable Model Rules, we also cite, as persuasive authority and guidance, cases interpreting prior iterations of the Model Rules, and relevant commentary.

writing, to the representation." (emphasis added). A "matter" is defined as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties" and "any other matter covered by the conflict of interest rules of the appropriate government agency." Rule 1.11(e)(1)–(2).

For the purposes of Rule 1.11(a)(2), the term "matter" "contemplates a discrete and isolatable transaction or set of transactions between identifiable parties." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 342 (1975).[10] For example, "[t]he same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter." *Id.* While "a 'matter' may continue in another form," the determination of whether two matters are the same should be based on "the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." Rule 1.11 cmt. 10.[11] The Rule's comments make clear that restrictions applicable to former government lawyers "should not be so restrictive as to inhibit transfer of employment to and from the government," and that the Rule's "same matter" limitation is intended to ensure that a former government lawyer is "disqualified only from particular matters . . . involving a specific party or parties, rather than extending disqualification to all substantive issues on which the lawyer worked." Rule 1.11 cmt. 4.

---

[10] This ABA Opinion provided guidance on ABA Model Code of Professional Responsibility Disciplinary Rule 9-101(B) ("DR 9-101(B)"), which was a precursor to Rule 1.11, stating "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee." This rule was similar in substance to Rule 1.11(a)(2), although, as explained *infra*, the "substantial responsibility" standard it applied has been recognized to be a lower standard for disqualification than the "personal and substantial participation" standard of Rule 1.11(a)(2).

[11] Courts in the Seventh Circuit have "embrace[d] the language of the committee notes." *Tomasian v. C.D. Peacock, Inc.,* No. 09 C 5665, 2012 WL 2590493, at *5 (N.D. Ill. July 3, 2012) (Schenkier, M.J.).

The inquiry is not whether there is *any* relationship or connection between the prior and subsequent representation, as the DOJ seems to argue, but rather whether the two representations in fact constitute the same matter. *See Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 29–30 (D.D.C. 1984) (finding matters were not the same merely because the "past governmental matters may have some factual connection to the allegations" of the later action).[12] To demonstrate that two matters are the same, the moving party must establish that the issues in the two cases are "identical" or "essentially the same," and the connection between them is "patently clear." *Twin Labs., Inc. v. Weider Health & Fitness,* No. 89 CIV. 0949 (MBM), 1989 WL 49368, at *5 (S.D.N.Y. May 4, 1989) (applying DR 9-101(B)).

Even assuming some overlap between two matters, the caselaw makes clear that commonalities in two investigations' areas of focus are insufficient to conclude that two matters are the "same" for the purpose of a disqualification analysis under the disciplinary rules. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 05-1720 (JG) (JO), 2006 WL 6846702, at *12–16 (E.D.N.Y. Aug. 7, 2006) (matters not the "same" under DR 9-101(B) where prior government investigation included requests for information about topics central to subsequent litigation, because a contrary holding "would disqualify a former government attorney from participating in any litigation that had any factual overlap with a matter on which the attorney had worked while in government service"); *Twin Labs., Inc.,* 1989 WL 49368, at *5 (matters not the same merely because certain facts from earlier case may be germane to later case).

---

[12] *Laker Airways* analyzed disqualification under Rule 9-101(B) of the D.C. Code of Professional Responsibility. This rule was consistent with Rule 1.11(a)(2). *See* 103 F.R.D. at 28 ("A lawyer shall not at any time accept private employment in connection with any matter in which he or she participated personally and substantially as a public officer or employee, which includes acting on the merits of a matter in a judicial capacity.") (citation omitted).

Based on the information proffered by the DOJ, and other publicly available information, the CFTC Silver Investigation and the DOJ's case do not qualify as the same matter. The DOJ claims the matters are "sufficiently related" or "sufficiently similar" because there is "significant overlap of the parties, legal theories, and underlying substantive conduct." (Mot. at 14.) Rule 1.11(a)(2), however, requires that matters be the same, not merely related or similar, (Green Decl. (Ex. A) at ¶ 21), and the relevant facts and the caselaw the DOJ cites demonstrate that the CFTC Silver Investigation and the present case do not meet that standard.

First, the DOJ states that the CFTC Silver Investigation involved manipulation of silver futures contracts, and this case charges Mr. Nowak with manipulation of the markets for precious metals futures contracts, in violation of the price manipulation and anti-spoofing provisions of the Commodity Exchange Act. (Mot. at 16.) While both matters relate to potential or alleged conduct falling under the overly expansive category of "market manipulation," and both involve silver futures contracts,[13] the CFTC Silver Investigation focused on market activity that is wholly distinct from the alleged trading activity that forms the basis for the criminal charges in this case. The crux of the CFTC Silver Investigation, as publicly described, focused on complaints concerning the long-term suppression of prices in the silver market by holding large short silver futures positions. (DMO Report (Ex. D) at 1; 2013 CFTC Press Release (Sullivan Decl. Ex. B) at 1.) In contrast, the allegations in this case arose from an entirely separate investigation conducted by a different government agency, and involve conduct allegedly intended to quickly and momentarily increase or decrease prices of precious metals futures contracts via the placement of orders that were intended to be canceled.

---

[13]  The Indictment alleges criminal acts with respect to gold, platinum and palladium futures, in addition to silver. (Indict. at ¶¶ 46(d), 53, 56, 71, 73, 75 and 77.)

The mere fact that both investigations involved suspected commodity futures price manipulation (a core area of focus for the CFTC that has been common to numerous investigations for decades) is an insufficient basis on which to conclude that the matters are the same. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 1274555, at *3 (N.D. Ohio Mar. 20, 2019) (finding matters were not the same for the purpose of Ohio's analog to Rule 1.11(a)(2) where they were connected by the same broad subject matter). It cannot be the case that all matters involving suspected market manipulation of precious metals futures contracts—even if they involve the same global institution and its traders—are considered the same for purposes of Rule 1.11. Such an interpretation would be contrary to the Rule's stated purpose: to disqualify former government lawyers "only from particular matters . . . rather than extending disqualification to all substantive issues on which the lawyer worked." Rule 1.11(a)(2) cmt. 4. (*See* Green Decl. (Ex. A) at ¶¶ 18–19.)

Second, the DOJ relies on the fact that two co-defendants in this case, Messrs. Nowak and Jordan, gave voluntary testimony as part of the CFTC's Silver Investigation, and were asked questions about trading activity in violation of laws and regulations prohibiting market manipulation. (Mot. at 16.) But the fact that two traders gave testimony in one investigation— four days in total in an inquiry that lasted five years and involved dozens of interviews, more than 7,000 enforcement staff hours and extensive investigative steps—and were indicted *nine years later* for alleged conduct totally distinct from the focus of the vast majority of that testimony—similarly fails to establish that the two matters are the same.[14] The bare fact that two otherwise separate investigations involving numerous witnesses have two individuals in common

---

[14] The significant time elapsed between the CFTC Silver Investigation and this criminal case also weighs against finding that the two matters are the same. Rule 1.11 cmt. 10 (time elapsed should be considered when determining whether two matters are the same).

does not make those two investigations the same matter under Rule 1.11(a)(2). *See Flego v. Philips, Appel & Walden, Inc.*, 514 F. Supp. 1178, 1182–83 (D.N.J. 1981) (holding matters not the same under DR 9-101(B) where employees of defendant in subsequent litigation had been interviewed in a prior government investigation about topics broadly relevant to both matters); *cf. Ferncliff Cemetery Ass'n v. Town of Greenburgh, New York*, No. 18-CV-6411 (CS), 2019 WL 6878560, at *5 (S.D.N.Y. Dec. 17, 2019) (finding matters were not the same under N.Y. Rule 1.11(a)(2) because, despite involving the same parties, they did not share the same facts or legal theories), *appeal docketed*, No. 20-207 (2d Cir. Jan. 15, 2020). Notably, the DOJ has not sought access to the CFTC Silver Investigation file, and has not produced any materials from that investigation in discovery, other than the testimony of Messrs. Nowak, Jordan and Gottlieb.[15] The apparent wall between the DOJ and the CFTC Silver Investigation further supports the conclusion that the CFTC Silver Investigation and the DOJ's case are not the same "matter" under the ethical rules.

Finally, the DOJ asserts that the matters so related as to be considered the same because "part of" the questioning of Messrs. Nowak and Jordan (but not Mr. Gottlieb) in their testimony in the CFTC Silver Investigation "centered on conduct that is at the core of this criminal case— the entry of futures orders without the intent to execute." (Mot. at 17.) But in over four days of testimony in total, memorialized in 881 pages and 19,995 lines of transcript, the CFTC asked only a few questions—at the end of the second day of each session—about the entry of futures orders without the intent to execute. Mr. Nowak was asked whether he was aware of traders entering bids or offers that they did not intend to execute, which he denied. Mr. Jordan was

---

[15] In a discovery request letter dated December 3, 2019, defense counsel asked the DOJ attorneys how they had lawfully obtained CFTC materials in the absence of an access request. To date we have not received a response. (Letter from James Joseph Benjamin, Jr. to Avi Perry and Matthew Sullivan (Dec. 3, 2019) (Ex. G) at ¶ 10 (attachment omitted).)

asked whether he ever traded so as to influence the price on an exchange, or showed a bid or offer without intent to execute, which he denied. The discussions comprise only a few pages of transcript. The CFTC asked almost no follow-up questions on that topic, and did not point to any specific bids or offers of concern, or any timeframes of interest.

The only link between the CFTC Silver Investigation and this case is the DOJ's intention (1) to introduce these denials of spoofing-related conduct from Messrs. Nowak and Jordan's testimony in the CFTC Silver Investigation, and (2) to call a CFTC witness to testify about the materiality of those statements to that investigation. (Mot. at 23–24.) Even if such testimony is admissible, which is far from certain—an untethered reference to a prior "silver manipulation" investigation that resulted in no charges raises obvious issues under Federal Rule of Evidence 403, and the probative value of a CFTC witness is unclear at best—this type of relationship falls far short of making these two matters "the same" within the meaning of Rule 1.11(a)(2).

The cases on which the DOJ relies in fact make clear that—on the factual record developed to date—the CFTC Silver Investigation and this case are not the same matter, and therefore that Mr. Meister's representation of Mr. Nowak here is not prohibited by Rule 1.11(a)(2). In *Securities Investor Protection Corp. v. Vigman*, 587 F. Supp. 1358, 1365–66 (C.D. Cal. 1984), former Securities and Exchange Commission ("SEC") attorneys had participated in an SEC enforcement action involving identical securities fraud claims against the same defendants that they later sued on behalf of private clients. *See id.* at 1365–66. The court found that the two actions constituted a single "matter" under 1.11(a)(2) because they involved the same "discrete series of transactions" concerning the same conduct and the same parties. *Id.* at 1365. Here, there is no indication that the CFTC Silver Investigation and the current case

involve the same transactions, or even the same types of transactions, much less identical claims arising out of identical alleged conduct.

*United States v. Villaspring Health Care Center, Inc*., No. 3:11-43-DCR, 2011 WL 5330790 (E.D. Ky. Nov. 7, 2011), on which the DOJ relies, also fails to support the argument that the CFTC Silver Investigation and this case are the same matter.  In *Villaspring*, a former Assistant Attorney General had worked on a criminal investigation that he referred to the U.S. Attorney's Office and that led *directly* to a federal lawsuit.  *Id*. at *5.  The attorney later sought to represent, in private practice, the very target he had investigated while working for the state government.  *Id*.  The court found that, because the prior investigation led directly to the subsequent lawsuit, and the conduct that the state investigated was the same conduct at issue in the federal lawsuit, the cases constituted the same "matter" under the Kentucky analog to Rule 1.11(a).  *Id*.  By contrast, the publicly available facts about the CFTC Silver Investigation, including those proffered by the DOJ, do not reflect any direct causal relationship between the CFTC Silver Investigation and the instant case.  The investigations were conducted by separate agencies, and there is no indication that the DOJ's investigation resulted from a referral from the CFTC, or relied on findings in the CFTC Silver Investigation which, as noted, the DOJ has informed counsel for Mr. Nowak that they have not sought or received access to.  The six-year period between the close of the CFTC Silver Investigation and the charges in this case, and the commencement of new CFTC and DOJ parallel investigations in the interim, are additional indications that no such relationship exists.

In contending that the CFTC Silver Investigation and this criminal case qualify as the same matter for purposes of Rule 1.11(a)(2) analysis, the DOJ relies on several cases that apply a "substantial relationship" test used to determine whether a conflict exists pursuant to other rules

of professional conduct and at common law.[16]  But this standard—lower than the "same matter"

standard for disqualification under Rule 1.11(a)(2)—has been held inapplicable to motions to

disqualify a former government attorney, particularly where the former government agency

client is not a party.  *See Kovacevic v. Fair Auto. Repair, Inc*., 641 F. Supp. 237, 240 n.1 (N.D.

Ill. 1986) (Nordberg, J.) (finding the Seventh Circuit's [now abrogated] "substantial relationship"

test did not apply to a case in which the former government attorney's agency was not a party);

*Martley v. City of Basehor, Kansa*s, No. 19-02138-DDC-GEB, 2019 WL 6340132, at *11–12 (D.

Kan. Nov. 27, 2019) (holding "same matter" standard of Kansas's analogous Rule 1.11(a) was

proper standard for motion to disqualify former government attorney due to successive

representation, rather than "substantial relationship" standard of Rule 1.9(a)); *In re Nat'l*

*Prescription Opiate Litig*., 2019 WL 1274555, at *3 ("To allow a government lawyer to leave

public service for private practice and also prevent the government lawyer from, in fact,

switching sides, [Rule 1.11] expressly requires that the 'matter' that the government lawyer

worked on be the same, instead of merely 'substantially related' as required by Rule 1.9.")

---

[16] The DOJ cites *In re Sofaer*, 728 A.2d 625 (D.C. Ct. App. 1999) and *United States v. Philip Morris, Inc.*, 312 F. Supp. 2d 27 (D.D.C. 2004), both of which were decided under District of Columbia Rule 1.11(a).  Notably, the D.C. Rule's prohibitions are broader than those in Model Rule or N.Y. Rule 1.11(a)(2).  The D.C. Rule is not limited to the "same matter" but extends to matters that are "the same as, or substantially related to, a matter in which the lawyer participated personally and substantially as a public officer or employee."  *In re Sofaer*, 728 A.2d at 626 (emphasis added).  These opinions, which are based on a rule that does not apply here and sets a lower threshold for disqualification, are inapposite.

The DOJ also cites two related cases from this District that applied a "substantial relationship" test, which was previously used in this Circuit to determine whether disqualification was appropriate where an attorney was representing a party adverse to a former client.  *Dugar v. Bd. of Educ. of the City of Chicago, Dist. 299*, No. 92 C 1621, 1992 WL 142302 (N.D. Ill. June 18, 1992) (Nordberg, J.); *Porter v. Bd. of Educ. for the City of Chicago, Dist. 299*, No. 92 C 0533, 1992 WL 166570 (N.D. Ill. July 9, 1992) (Nordberg, J.).  As explained *supra*, courts have since recognized that this lower standard is not the proper test for motions to disqualify former government lawyers under Rule 1.11(a)(2).  Furthermore, in light of the Seventh Circuit's decision in *Watkins v. Trans Union, LLC*, 869 F.3d 514 (7th Cir. 2017), the "substantial relationship" test has been abrogated by this District's adoption of the ABA Model Rules.  *Id.* at 524-25 (holding that the adoption of the narrower Model Rule 1.9 supplanted the broader substantial relationship test).  In any event, these cases involved attorneys who were directly adverse to their former government agency clients, which is not the case here.

For all of these reasons, the CFTC Silver Investigation and this case are not the "same matter" under Rule 1.11. As a result, Mr. Meister's representation of Mr. Nowak is not prohibited by Rule 1.11(a)(2).[17]

2. *Based on the Facts Proffered by the DOJ, and the Information Known to Mr. Meister, Mr. Meister Was Not Personally and Substantially Involved in the CFTC Silver Investigation*

Even if the CFTC Silver Investigation and the current case were the same matter for purposes of Rule 1.11(a)(2), a disqualifying conflict arises only if Mr. Meister participated "personally and substantially" in the prior matter. Based on the information proffered by the DOJ, and the information known to Mr. Meister, his involvement does not meet that standard. (Meister Decl. (Ex. B) at ¶ 12.) The DOJ argues that Mr. Meister's participation was personal and substantial because he had supervisory responsibility for the CFTC Silver Investigation from the January 2011 start of his tenure as CFTC Enforcement Director to March 2011, and "received staff briefings, emails and memoranda about the investigation" in that period. (Mot. at 12–13.) But these assertions do not establish personal and substantial participation under Rule 1.11(a)(2).

For his part, Mr. Meister recalls involvement in the CFTC Silver Investigation for a brief period at the beginning of his tenure as Director, when he had supervisory responsibility for the investigation, among hundreds of others within his official oversight, and among many other activities. (Meister Decl. (Ex. B) at ¶¶ 4–6.) He recalls participating in relatively few

---

[17] The DOJ contends that the Court may find a disqualifying conflict under Rule 1.11(a)(2) where the matters are not the same, but the prior matter involved advice on subjects highly relevant to matter at issue. (Mot. at 20–21.) This position is contrary to the guidance of Rule 1.11 and the balance of the caselaw. Moreover, the specific decisions on which the DOJ relies—*Dugar*, *Porter* and *Green v. City of New York*, No. 10 Civ. 8214 (PKC), 2011 WL 2419864 (S.D.N.Y. June 7, 2011)—clearly do not apply here. All three involved attorneys who defended government clients in prior actions involving specific government agency practices and policies, and later represented plaintiffs suing their former government clients over the legality of those same policies and practices. The CFTC is not a party here, and the DOJ does not proffer any basis to conclude that its practices and policies are "highly relevant" to this case.

discussions about the investigation, and he generally recalls the substance of some of those conversations.  (*Id.* at ¶ 6.)  At the time Mr. Meister joined the CFTC in January 2011, at least 35 individuals had been interviewed in the course of the CFTC Silver Investigation.  *See Statement of Commissioner Bart Chilton Regarding the CFTC Investigation of Silver Markets* (Sept. 21, 2009) (Ex. H) (announcing 32 individuals had been interviewed as of September 2009, prior to the testimony of Messrs. Nowak, Jordan and Gottlieb in August–September 2010).  Mr. Meister does not recall learning the names of any witnesses that testified during the CFTC Silver Investigation or what they said in their testimony.  (Meister Decl. (Ex. B) at ¶ 6.)  He does not recall the receipt or the content of any e-mails or memoranda about the CFTC Silver Investigation.  (*Id.* at ¶ 7.)  To be sure, Mr. Meister does not believe his participation was personal and substantial within the meaning of Rule 1.11(a)(2).  (*Id.* at ¶ 12.)[18]

Mere formal supervisory responsibility is not enough to establish personal and substantial participation.  Courts have held that this standard requires "more than official responsibility, knowledge, perfunctory involvement, or involvement in only administrative or peripheral issues."  *City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2014 WL 7146362, at *7 (N.D. Ill. Dec. 15, 2014) (Bucklo, J.) (citations omitted) (interpreting the District of Columbia analog to Rule 1.11(a)(2));[19] *see United States v. Josten*, No. 88 CR 644, 1989 WL 112310, at *3 (N.D. Ill. Sept. 14, 1989) (Marshall, J.) (finding former Assistant U.S. Attorney's supervision of an investigation insufficient to establish "substantial responsibility"); ABA Comm. on Ethics &

---

[18]  It is worth noting that the CFTC Silver Investigation had been underway for at least two years before Mr. Meister joined the CFTC, and continued for well over two years after he recused.  (*See* 2013 CFTC Press Release (Sullivan Decl. Ex. B).)

[19]  Because Rule 1.11(a)(2)'s "personal and substantial participation" standard is derived from 18 U.S.C. § 207(a)(1) (statute placing restrictions on former government employees), Rule 1.11 at annot., courts have taken guidance from the regulations interpreting that standard, 5 C.F.R. § 2641.201.  *See, e.g.*, *In re Sofaer*, 728 A.2d at 643.

Prof'l Responsibility, Formal Op. 342 (1975) ("[B]eing the chief official in some vast office or organization does not *ipso facto* give that government official or employee the 'substantial responsibility' contemplated by the rule in regard to all the minutiae of facts lodged within that office.");[20] *see also* Green Decl. (Ex. A) at ¶ 22. Personal and substantial participation is "direct, extensive, and substantive, not peripheral, clerical, or formal." *Purdue Pharma L.P.*, 2014 WL 7146362, at *7 (quoting D.C. Bar Ethics Op. 84 at 150 (1980)). Courts have therefore required movants seeking disqualification to establish that the attorney was more than a "passive recipient" of information. *See In re Sofaer*, 728 A.2d 625, 649 (D.C. Ct. App. 2019) (finding substantial involvement where attorney was kept informed of progress of the investigation in order to provide legal advice and aid in responding to subpoenas and preparing for testimony).

In assessing whether an attorney's participation was personal and substantial, courts evaluate the significance of the work the attorney performed and the extent to which the attorney was "personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question." *Lofton v. Brown & Williamson Tobacco Corp.*, No. 90 C 5796, 1992 WL 3731, at *4 (N.D. Ill. Jan. 7, 1992) (Guzman, J.) (citation omitted). Courts also determine whether the attorney's participation included an "exercise of legal judgment or analysis," *id.* at *4, or "directly affect[ed] the merits of [the prior case]." *Arroyo v. City of Buffalo*, 15-CV-753A(F), 2017 WL 3085835, at *12 (W.D.N.Y. July 20, 2017) (citation omitted). For example, in *Purdue Pharma*, where the attorney received

---

[20] *Josten* and ABA Formal Op. 342 considered disqualification under DR 9-101(B) (see *supra* note 10), which used a "substantial responsibility" standard. This was a lower standard for disqualification than the "personal and substantial" participation standard of Rule 1.11(a)(2), which applies here. *See Kovacevic v. Fair Auto. Repair, Inc.*, 641 F. Supp. 237, 241 n.4 (N.D. Ill. 1986) (Nordberg, J.) ("[C]ourts interpreted 'substantial responsibility' to disqualify government attorneys with supervisory positions from private employment with respect to any matter arising during that lawyer's tenure as a supervisor. Rule 1.11 [applies a different standard and] sets out more specifically the circumstances in which concern for public confidence in government necessitates disqualification of a lawyer.") (citation omitted).

notice of the settlement and coordinated press activity regarding the settlement, the court found no substantial involvement because there was no evidence that the attorney "played any role in directing the investigation, negotiating a settlement . . . or approving the final settlement and consent judgment." 2014 WL 7146362, at *7.

No cases of which we are aware, and none cited by the DOJ, hold that generalized assertions concerning a former government attorney's formal supervisory role and receipt of briefings, emails and memoranda are a sufficient basis for finding personal and substantial participation within the meaning of Rule 1.11(a)(2). Indeed, two cases on which the DOJ relies, in which former CFTC attorneys were prevented from representing private parties in CFTC matters in which the attorneys participated while employed by the CFTC, make clear that Mr. Meister's involvement in the CFTC Silver Investigation was insufficient to establish a violation of Rule 1.11(a)(2).

In *Kadish v. C.F.T.C.*, 548 F. Supp. 1030 (N.D. Ill. 1982) (Shadur, J.), relied upon by the DOJ, a CFTC attorney drafted the initial complaint in an action, gave advice to and consulted with other CFTC attorneys responsible for the related investigation and, after leaving the CFTC, joined a firm that was retained to represent the target of the CFTC's investigation. *Id.* at 1031–32.[21] Although the attorney asserted that the complaint he had drafted was mere "boilerplate," the court, in the case brought by the CFTC, found that "even the decision that a 'boilerplate' complaint of a particular kind will do an adequate job implicates a legal judgment." *Id.* at 1033. The court found that this judgment, coupled with the attorney's other involvement in the matter, indicated that he had substantial responsibility for the matter while at the CFTC. The

---

[21] *Kadish* (and *Kessenich*, discussed *infra*) were decided pursuant to DR 9-101(B)'s "substantial responsibility" standard. Courts have recognized that this precursor to Rule 1.11 set a lower threshold for disqualification than current Rule 1.11(a)(2). *See supra* note 20.

information proffered by the DOJ and Mr. Meister does not reflect that Mr. Meister took any similar action with respect to the CFTC Silver Investigation in the brief period prior to his recusal.

Similarly, in *Kessenich v. C.F.T.C.*, 684 F.2d 88 (D.C. Cir. 1982), also relied upon by the DOJ, a former CFTC attorney received and screened a reparation complaint filed by Kessenich and forwarded it to the respondent. *Id.* at 94. After leaving the CFTC, the attorney sought to represent the respondent in the civil action arising from the same complaint, in which complainant Kessenich was an adverse party. *Id.* at 90. The attorney characterized his involvement in the matter while employed by the CFTC as ministerial and consisting solely of accepting the plaintiff's complaint. *Id.* at 96. The CFTC—also a party in that case—disagreed, characterizing the attorney's handling of the reparation complaint as a "decision of the Commission in the exercise of its statutory discretion." *Id.* at 97. The court found that the facts of the case lay "at the outer bounds of the 'substantial responsibility' required to invoke the disciplinary rule," *id.* at 96, but disqualified the attorney largely due to concern for the "appearance of impropriety" that would result if "litigants must fear that the public officials who handle their case may one day oppose them in regard to the same matter." *Id.* at 97–98. Here there is no suggestion, by the DOJ or CFTC, that Mr. Meister took actions in the CFTC Silver Investigation that constitute an exercise of the CFTC's statutory discretion. And in any event, Mr. Meister's representation of Mr. Nowak does not give rise to the issue addressed in *Kessenich*, as Mr. Nowak is not adverse to a private litigant who brought a complaint to the CFTC.[22]

---

[22] Furthermore, even though there is no appearance of impropriety here, disqualification of counsel on that basis has been rejected by the Seventh Circuit. *See Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir. 1982) ("The possible appearance of impropriety . . . is simply too weak and too slender a reed on which to rest a

*(cont'd)*

Furthermore, the DOJ's contention that the CFTC Silver Investigation and the current criminal case are the same "matter" is principally based on the fact that Messrs. Nowak and Jordan, co-defendants in the criminal case, were among those who testified in the CFTC Silver Investigation and were asked a few questions about the placement of bids and offers without intent to execute. That testimony—and, potentially, the prospect of trial testimony of a CFTC witness as to the materiality of their denials to that investigation—are the only possible touch points with the CFTC Silver Investigation. It is therefore significant that there is no indication that Mr. Meister was aware of that testimony (taken a few months before he became Enforcement Director), or those specific questions and answers, or their relevance, if any, to the CFTC Silver Investigation. (Meister Decl. (Ex. B) at ¶ 6.) These facts also weigh against a finding that Mr. Meister was personally and substantially involved in the CFTC Silver Investigation such that Rule 1.11(a)(2) would preclude his involvement here. *See United States v. Dancy*, Criminal No. 3:08CR189, 2008 WL 4329414, at *1 (E.D. Va. Sept. 16, 2008) (finding defendant's attorney, a former prosecutor who handled a grand jury investigation relating to the investigation of the defendant, and had allowed subpoenas to be issued regarding the investigation, had not, under state analog to Rule 1.11(a)(2), been "substantially" involved by

---

disqualification order . . . "); *see also Bartlett v. Bartlett*, No. 16 CV 6595, 2016 WL 7374276, at *5 (N.D. Ill. Dec. 20, 2016) (Shah, J.) ("Under the Model Rules, the appearance of impropriety is not a ground for disqualifying a lawyer from representing a party to a lawsuit.") (quoting *Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir. 1988)) . Particularly where, as here, Mr. Nowak's constitutional right to counsel of his choice is at stake, disqualification should not be based solely on an appearance of impropriety arising from his relationship to the nonparty CFTC.

The DOJ nonetheless cites *United States v. Dorfman*, 542 F. Supp. 402 (N.D. Ill. 1982) (Marshall, J.) in an attempt to demonstrate that the appearance of impropriety is a sufficient basis for disqualification. In relevant part, *Dorfman* concerned whether recusal from a matter was sufficient for a former U.S. Attorney to avoid the two-year ban imposed by 18 USC § 207(a)(2) on matters that were under the attorney's "official responsibility" during his last year in office, a provision that is not at issue here. *Id.* at 408. Therefore *Dorfman*—where the court disqualified the attorney from appearing in such a matter on behalf of a private party, notwithstanding the recusal, due to an appearance of impropriety coupled with "evidence of the likelihood of actual wrongdoing under one of the disciplinary rules," *id.* at 410–11—is inapplicable here.

"participating in or obtaining information that she knew, at the time, involved her present client").

## B.    Rule 1.11(c) Does Not Apply to Information About the Former Government Client

The DOJ posits that even if Rule 1.11(a)(2) does not prevent Mr. Meister from representing Mr. Nowak in this case, Mr. Meister's knowledge of confidential CFTC information may create a conflict under Rule 1.11(c).  (Mot. at 22–25.)  But Rule 1.11(c) applies only where a former government attorney has confidential government information (i) about a person; (ii) obtained during an attorney's government service; (iii) that may be used—in a matter in which that person's interests are adverse to those of the attorney's client—to the material disadvantage of that person.  (Green Decl. (Ex. A) at ¶ 28.)  The DOJ does not contend that Mr. Meister has (or received) any such information.  Rule 1.11(c) states, in relevant part:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about *a person* acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse *to that person* in a matter in which the information could be used to the material disadvantage *of that person*. As used in this Rule, the term 'confidential government information' means information that has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public.

(emphasis added).[23]

A "person" within the meaning of Rule 1.11(c) is a third party, not the government agency whom the attorney previously served, and therefore the Rule does not apply to

---

[23]  Furthermore, Rule 1.11(c) requires that the lawyer have "actual knowledge."  It does not apply "with respect to information that merely could be imputed to the lawyer."  N.Y. Rule 1.11 cmt. 8.  Courts have required the government to demonstrate "*exactly* what information [the attorney] possesses that is currently confidential and *specifically* how she obtained that information."  *United States v. Rasco*, No. CR408-100, 2009 WL 1873804, at *4 (S.D. Ga. June 29, 2009) (emphasis in original).  In contrast, the DOJ offers only a general theory that Mr. Meister may have "insight drawn from the CFTC's confidential information" that could be used to cross-examine an unidentified CFTC witness.  (Mot. at 24.)  The DOJ's contentions thus lack the specificity as to actual knowledge required under Rule 1.11.  (Green Decl. (Ex. A) at ¶¶ 33–34.)

information learned about the former government client.  *See* ABA Formal Ethics Op. 97-409

n.7 (1997) ("ABA Formal Op. 97-409") ("[p]erson" within the meaning of Rule 1.11(c) "does

not include the former government client, but refers only to third parties whom the former

government lawyer may oppose on behalf of a private party after leaving government service");

N.Y. State Bar Ass'n, Comm. on Prof'l Ethics, Op. 1148 (Apr. 2, 2018) (describing N.Y. Rule

1.11(c) as a proscription "against the use of confidential government information against third

persons").[24]  The Rule "thus protects adverse third parties, but does not protect the government

client itself against the use of 'confidential government information' against it by its former

lawyers."  ABA Formal Op. 97-409 n.7.  (Green Decl. (Ex. A) at ¶ 29.)

   In support of its contention that Rule 1.11(c) may prevent Mr. Meister from representing

Mr. Nowak in this matter, the DOJ relies on *In re National Prescription Opiate Litigation*, which

in fact establishes that Rule 1.11(c) protects only adverse third parties from the use of

confidential government information.  *See* 2019 WL 1274555, at *4–5 (analyzing Ohio analog to

Rule 1.11(c)).  In that case, the former U.S. Attorney for the Northern District of Ohio acquired,

during her government service, confidential information about the city of Cleveland and

Cuyahoga County's response to the opioid crisis.  *Id*. at *4.  Thereafter, when in private practice,

she defended an opiate manufacturer in a multi-district litigation in which Cleveland and

Cuyahoga County were among the plaintiffs.  *Id.* at *1.  The court determined that, while U.S.

Attorney, she had received confidential government information that might "go to the heart of

Plaintiffs' damages claims" and therefore could "materially prejudice" those plaintiffs, in

violation of Rule 1.11(c).  *Id.* at *5.  The DOJ makes no such allegation here, and in fact does not

---

[24]  ABA Formal Op. 97-409 concerns a prior version of Rule 1.11.  The relevant provisions are consistent with those
in the current Rule.

allege that Mr. Meister ever acquired confidential government information about a third party that could be used in this case to materially disadvantage that third party. In any event, Mr. Meister does not believe he has any confidential government information that could be used to defend Mr. Nowak in this case, much less to the disadvantage of a third party. (Meister Decl. (Ex. B). at ¶ 13; Green Decl. (Ex. A) at ¶ 32.)

Rather, the DOJ raises the possibility that Mr. Meister may use information about the CFTC Silver Investigation to cross-examine one of his former CFTC colleagues about his current client's alleged false denials to the CFTC, "all informed by his insight drawn from the CFTC's confidential information" or that he may utilize information regarding the CFTC's issuance of spoofing guidance in service of a challenge to the constitutionality of the spoofing statute. (Mot. at 24.) As discussed *infra*, use of a former client's confidential information is governed not by Rule 1.11(c), but by a separate and distinct ethical rule. The concern the DOJ raises falls outside the prohibitions of Rule 1.11(c), because, as set out above, that Rule does not apply to the use of confidential information about a former government client, but only to the use of information about adverse third parties.[25] (Green Decl. (Ex. A) at ¶ 34.)

---

[25] The DOJ relies on the brief discussion of Rule 1.11(c) in *United States v. Villaspring Health Care Center, Inc.*,, but that case does not support the argument that the Rule applies here. Civil Action No. 3:11-43-DCR, 2011 WL 5330790, at *6 (E.D. Ky. Nov. 7, 2011). *Villaspring* appears to assume—without analysis—that Rule 1.11(c) protects the government agency or the agency's confidential information (as opposed to a third party). Regardless, *Villaspring* involved distinct facts: A former government attorney who had participated personally and substantially in the investigation of Villaspring that led directly to a subsequent action sought to defend Villaspring in that action. That was the principal basis for disqualification. *Id.* at *6. The court also found that, due to his government service, the attorney was privy to confidential information "in the form of strategic insights . . . [and] strengths and weaknesses of the evidence compiled against [his client]," evidence to be used by the government in the subsequent action. *Id.* In short, the attorney switched sides on the same matter, and had access to information during his government service that went to the very heart of the claims against which he later sought to defend Villaspring.

**C.  Any Confidential CFTC Information Mr. Meister Has Is Protected by Rule 1.11(a)(1), Which Requires Compliance with Rule 1.9(c)**

To be sure, the DOJ is correct that Rule 1.11 protects information an attorney learned while working for the government to the same extent as information an attorney learned while representing a private client.  (Mot. at 22.)  But the protection of information relating to the representation of a former government client is not accomplished through Rule 1.11(c)—a rule of disqualification—but through Rule 1.11(a)(1), which requires that former government attorneys comply with Rule 1.9(c), the general provision regarding use of information relating to a prior representation.[26]  *See Pennington v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, No. 3:05-1075, 2006 WL 8445756, at *4 (M.D. Tenn. May 2, 2006) (finding confidentiality protections of the state analog to Rule 1.9(c) applied where the former client was a government agency, but state analog to Rule 1.11(c) applied only if former government attorney possessed information "particularized to 'a person'").[27]

Rule 1.9(c) prohibits Mr. Meister from using confidential information relating to his tenure as CFTC Enforcement Director to the disadvantage of the CFTC, or from improperly

---

[26] The DOJ's Motion states, without citation, "[n]otably, the source of the confidential government information is not tied to a specific 'matter'—unlike the analysis in Rule 1.11(a)(2) discussed above—because Rule 1.11(c) 'protects information obtained while working for the government to the same extent as information learned while representing a private client,' meaning that the 'information may not be used or revealed to the government's disadvantage.'"  (Mot. at 22 (citation omitted).)  The above-referenced language appears to come from the comments to N.Y. Rule 1.11, which makes clear that it is Rule 1.11(a)(1), not 1.11(c), that limits Mr. Meister's use of the CFTC's confidential information. N.Y. Rule 1.11 cmt. 4A ("By requiring a former government lawyer to comply with Rule 1.9(c), Rule 1.11(a)(1) protects information obtained while working for the government to the same extent as information learned while representing a private client.") (emphasis added).

[27] *See also* Simon's N.Y. Rules of Prof'l Conduct § 1.11:28 (2017 ed.) ("Rule 1.11(c) applies only when the confidential government information concerns a 'person,' meaning either a natural person (a two-legged individual) or a legal person (such as a corporation). . . . Confidential government information about something other than a person does not trigger Rule 1.11(c).  However, information about something other than a person will be protected by Rule 1.11(a)(1), which says that a former government lawyer "'shall comply with Rule 1.9(c),' and Rule 1.9(c) protects a former client's confidential information.").

revealing that information. Rule 1.9(c) provides that a lawyer who has formerly represented a client shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Unlike Rule 1.11(c), Rule 1.9(c) does not provide a basis for disqualification. *See Commonwealth Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2002 WL 385559, at *3 (N.D. Ill. Mar. 12, 2002) (Scheniker, M.J.) ("[T]here is case law from this district specifically holding that Rule 1.9(c) does not create an independent basis for disqualification.")[28] Rather, it imposes certain restrictions on Mr. Meister's use or disclosure of information acquired in connection with his service to the CFTC. The Seventh Circuit has noted that "the courts can generally rely on the sound discretion of members of the bar to treat privileged information with appropriate respect." *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975).

Under Rule 1.9(c), Mr. Meister cannot use confidential information relating to his role as Enforcement Director to cross-examine a CFTC witness—should the DOJ be permitted to call a CFTC witness to testify about Messrs. Nowak and Jordan's testimony in the CFTC Silver Investigation—if such use of the information is to the nonparty CFTC's disadvantage, nor may he improperly reveal such information. Similarly, to take up the hypothetical posed by the DOJ, Rule 1.9(c) prohibits Mr. Meister from using confidential information related to his participation in the CFTC's issuance of spoofing guidance to the disadvantage of the nonparty CFTC, and from improperly revealing such information.

---

[28] *Commonwealth Insurance Co. v. Stone Container Corp.* discussed N.D. Ill. R. 83.51.9(c)(1), which was later replaced by Model Rule 1.9(c). The provisions are consistent in all relevant respects.

In short, Mr. Meister is under the same confidentiality obligations as any attorney who learned information about a former client (including a government client) in the course of representing that client. As discussed *infra*, these obligations create, at most, a potential conflict that is waivable by Mr. Nowak, (Green Decl. (Ex. A) at ¶¶ 36–39), and which Mr. Nowak has waived, after consultation with independent counsel Andrew Porter, who has affirmed that Mr. Nowak's waiver was knowing and voluntary. (Porter Decl. (Ex. C) at ¶¶ 7–8.)

### D. No Other Potential Conflict Exists with Respect to Cross-Examination of a CFTC Witness

The possibility that the DOJ may be permitted to call a CFTC witness at trial in this case, and that Mr. Meister might cross-examine that witness, does not create any other kind of conflict that may require disqualification here. In the absence of a violation of Rules 1.11(a)(2) or 1.11(c), the DOJ does not identify any authority for the proposition that Mr. Meister is prohibited from cross-examining a CFTC employee, even one who is a former supervisee, and we are aware of none.

The DOJ suggests that Mr. Meister's potential cross-examination of a CFTC employee (and former colleague) would be akin to an attorney who cross-examines his former client, and cites cases in which courts have found those circumstances may create a conflict.[29] (Mot. at 24.) But those cases are inapplicable here, because government attorneys represent the agencies for which they work, not the agency's employees. Therefore cross-examination of an agency employee is not akin to cross-examining a former client. *See Sailsbery v. Vill. of Sauk Vill.*, No. 15 C 10564, 2016 WL 1402291, at *4 (N.D. Ill. Apr. 11, 2016) (Ellis, J.) (assumption that an

---

[29] The DOJ cites *Hall v. United States*, 371 F.3d 969 (7th Cir. 2004) (finding potential conflict where attorney had previously represented an FBI informant likely to testify); *Enoch v. Gramley*, 70 F.3d 1490 (7th Cir. 1995) (finding no conflict where attorney had previously represented a government witness in an unrelated matter); *United States v. Basham*, 918 F. Supp. 2d 787 (C.D. Ill. 2013) (McCuskey, J.) (finding conflict where attorney had previously represented a co-defendant in a substantially related matter).

attorney for a government entity represents the entity's employees "ignores Seventh Circuit law and the Model Rules' statements to the contrary that '[a] lawyer employed by a [governmental organization] represents the entity'") (alterations in original) (quoting *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978)); *see also* Rule 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."); *id.*, cmt. 2 ("This does not mean, however, that constituents of an organizational client are the clients of the lawyer."); *id.*, cmt. 9 ("The duty defined in this Rule applies to governmental organizations.").

**E.      If the Court Concludes That a Conflict or Potential Conflict Exists, the Court Should Employ a Remedy Short of Disqualification to Protect Mr. Nowak's Rights**

Even if the Court were to find that Rule 1.11(a)(2) or 1.11(c) would be violated should Mr. Meister continue to represent Mr. Nowak, Seventh Circuit precedent requires the Court to make "an evaluation of the interests of the defendant, the government, the witness, and the public" in considering whether disqualification is appropriate, so as to protect the right of a defendant in a criminal case to counsel of his choice. *United States v. O'Malley*, 786 F.2d 786, 790 (7th Cir. 1986). Disqualification is not automatic, and district courts have "broad discretion to fashion remedies to avoid conflicts of interest." *United States v. Messino*, 181 F.3d 826, 830 (7th Cir. 1999). The presumption against disqualification is in the interest of the government, as well as defendants, given that erroneous deprivation of a criminal defendant's right to counsel of choice is a structural error that is ground for vacating a subsequent conviction. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). If the Court finds the DOJ has met the high burden

of demonstrating a conflict in this case, the balance of the interests weighs in favor of a remedy other than disqualification.[30]

Mr. Nowak would be significantly prejudiced by the disqualification of Mr. Meister, whom he trusts, and who has spent more than a year becoming familiar with the facts and issues of this complex and expansive prosecution. That this issue has been raised over one year after Mr. Meister was retained only increases the potential prejudice to Mr. Nowak, should Mr. Meister be disqualified. *See United States v. Cellini*, 596 F. Supp. 2d 1194, 1198-99 (N.D. Ill. 2009) (Zagel, J.) (discussing defendant's interest in retaining longstanding counsel in a criminal prosecution). Courts have denied motions to disqualify on the basis of shorter periods of delay, and the delay here weighs against disqualification. *See Castelino v. Rose-Hulman Inst. of Tech.*, No. 2:17-cv-139-WTL-MJD, 2017 WL 6523410, at *5–6 (S.D. Ind. Dec. 21, 2017) (finding delay of 5 months sufficient reason to deny motion to disqualify); *Arroyo v. City of Buffalo*, 15-CV-753A(F), 2017 WL 3085835, at *13 (W.D.N.Y. July 20, 2017) ("Defendants' substantial, 14-month, delay in seeking [attorney's] disqualification also weighs against disqualification."); *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-md-1565, 2010 WL 1257598, at *10–11 (S.D. Ohio Mar. 29, 2010) (finding waiver due to five-month delay).

The disqualification provisions of Rule 1.11 are designed not only to protect the former client—here the CFTC—but also to prevent a lawyer from exploiting public office for the advantage of another client. Rule 1.11(a)(2), cmt. 3. But in balancing the interests at issue in the context of potential disqualification of counsel in a criminal case, it is significant that the CFTC—Mr. Meister's former government client—has never suggested to Mr. Meister that it

---

[30] If the Court finds a conflict exists, we respectfully request the opportunity to respond separately on the question of imputation of that conflict to Skadden, Arps, Slate, Meagher & Flom LLP, and potential remedies. (Mot. at 31 n.14.)

perceives his representation of Mr. Nowak to create a conflict, and is not seeking Mr. Meister's

disqualification here or in the parallel CFTC enforcement action pending in this District.  These

facts also weigh against disqualification.  *See United States v. Floyd*, No. 87 CR 913, 1988 WL

23832, at \*2 (N.D. Ill. Mar. 8, 1988) (Williams, J.) (noting argument for disqualification is

typically weakened where the prior client does not join the government's disqualification

motion).

**F.      Mr. Nowak Has Provided a Knowing and Voluntary Waiver of Any Conflicts of Interest Presented by Mr. Meister's Prior Government Service**

Publicly available information concerning the CFTC Silver Investigation, and other

information provided by the DOJ and by Mr. Meister, collectively establishes that neither Mr.

Meister's involvement in the CFTC Silver Investigation, nor any other aspect of his tenure as

Enforcement Director, creates a conflict under Rules 1.11(a)(2) or 1.11(c) that prevents Mr.

Meister from representing Mr. Nowak here.  While Rule 1.9(c) prevents Mr. Meister from using

to the CFTC's disadvantage any confidential information relating to his prior government

service, or from improperly revealing any such information, this prohibition creates a conflict

only where "there is a significant risk that the representation . . . will be materially limited by the

lawyer's responsibilities to . . . a former client."  Rule 1.7(a)(2).  In determining whether a risk of

a material limitation exists, "[t]he critical questions are the likelihood that a difference in

interests will eventuate, and, if it does, whether it will materially interfere with the lawyer's

independent professional judgment in considering alternatives or foreclose courses of action that

reasonably should be pursued on behalf of the client."  Rule 1.7 cmt. 8.

There is a threshold question whether Rule 1.9(c)'s limitations create even a potential

conflict here, where evidence relating to the CFTC Silver Investigation appears likely to play a

negligible role—if any—in the current case, and where Mr. Meister does not believe he has any

confidential CFTC information that could be used to defend Mr. Nowak. (Meister Decl. (Ex. B) at ¶ 13; Green Decl. (Ex. A) at ¶¶ 35–36.) But even if such a potential conflict exists, it is waivable by Mr. Nowak. (Mot. at 27.) *See* Rule 1.7(b) ("Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if (1) the lawyer believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer; and (4) each affected client gives informed consent, confirmed in writing.")[31] Rule 1.0(e) defines "informed consent" as "an agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." (Green Decl. (Ex. A) at ¶ 37.) Mr. Meister is confident that his duty of confidentiality to the CFTC has not and will not prevent him from providing Mr. Nowak with competent and diligent representation. (Meister Decl. (Ex. B) at ¶ 14.)

Courts have a duty to ensure that a waiver of the Sixth Amendment right to conflict-free counsel is "knowing and intelligent," *Gomez v. Ahitow,* 29 F.3d 1128, 1133 (7th Cir. 1994), meaning that it is made "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). A waiver may be valid even if not made with perfect information, so long as the defendant knows enough "to make the choice an informed one—a rational reconciliation of risks and gains that are in the main understood." *United States v. Roth*, 860 F.2d 1382, 1387 (7th Cir. 1988). It is sufficient if the

---

[31] An "affected client" is a client "whose representation might be materially limited" under Rule 1.7(a)(2). Rule 1.7 cmt. 2. With respect to a potential conflict in this case arising out of Mr. Meister's duty of confidentiality to the CFTC, the only affected client is Mr. Nowak.

district court informs the defendant of "the nature and importance of the right to conflict-free counsel and ensure[s] that the defendant understands something of the consequences of a conflict." *United States v. Flores*, 5 F.3d 1070, 1078 (7th Cir. 1993).

To the extent an actual or potential conflict exists as a result of Mr. Meister's possession of relevant CFTC information and his duty to maintain the confidentiality of that information, Mr. Nowak has consulted with independent counsel, Andrew Porter—an attorney with a longstanding practice in this District, including 15 years of service in the U.S. Attorney's Office, about these issues. (Porter Decl. (Ex. C) at ¶ 4.) Mr. Porter has discussed with Mr. Nowak the potential conflicts that might arise in these circumstances, in light of the relevant ethical rules and Mr. Nowak's constitutional right to counsel under the Sixth Amendment. (*Id.* at ¶ 5.) Following these discussions, Mr. Nowak has waived his right to conflict-free counsel in writing. Mr. Porter is of the view that Mr. Nowak's waiver is knowing, intelligent, and voluntary based on the information provided to date. (*Id.* at ¶ 8.)

Finally, should the Court wish to seek further details from Mr. Meister regarding his recollection of his service to the CFTC, or his involvement in the CFTC Silver Investigation, so as to assess whether Mr. Nowak can waive any conflict, Mr. Meister is prepared to address *in camera* any questions the Court may have, and will seek the CFTC's authorization to do so.

## V.   CONCLUSION

For the reasons set forth above, Mr. Meister's representation of Mr. Nowak does not create a conflict pursuant to Rule 1.11(a)(2) or 1.11(c) based on Mr. Meister's prior CFTC government service, and were such a conflict to exist, disqualification—which the DOJ is not seeking here—would not be appropriate. The limitations on Mr. Meister's ability to use or reveal information relating to his role as CFTC Enforcement Director to defend this case pose, at

most, a conflict that can be waived by Mr. Nowak pursuant to Rule 1.7. As noted above, while the Court is not required to conduct further fact-finding in order to resolve these issues, should the Court wish to do so, Mr. Meister is prepared to respond *in camera* to any questions that the Court may have with respect to his service to the CFTC.

Dated: February 10, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

_____/s/ David Meister_____

David Meister
Jocelyn E. Strauber
Chad E. Silverman
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-2100

William E. Ridgway
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, IL 60606
(312) 407-0449

*Counsel for Michael Nowak*

</div>

# CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020, I caused a copy of the foregoing RESPONSE

TO THE UNITED STATES' MOTION FOR A HEARING to be filed with the Clerk of the

Court through the CM/ECF system, which will provide notice of the filing to all counsel of

record.

<div align="right">

_____/s/ David Meister_____
David Meister
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-2100

*Counsel for Michael Nowak*

</div>