UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGG SMITH,<br>MICHAEL NOWAK,<br>JEFFREY RUFFO, and<br>CHRISTOPHER JORDAN,<br><br>Defendants. | No. 19 CR 669<br><br>Judge Edmond E. Chang |

**REPLY BRIEF IN SUPPORT OF THE**
**UNITED STATES' MOTION FOR A HEARING**

The United States of America, by Robert Zink, Chief of the Fraud Section of the Criminal Division of the U.S. Department of Justice ("DOJ"), respectfully submits this reply brief in support of the United States' Motion for a Hearing ("Motion") and in response to Michael Nowak's Response to the United States' Motion for a Hearing ("Response").

**I.   The Undisputed Facts Regarding Meister's Involvement in the CFTC Silver Investigation Show His Personal and Substantial Participation**

Nothing in the defendant's lengthy Response, including its 26-page expert opinion from Professor Bruce Green (Strauber Decl. Ex. A)[1] and 5-page declaration

---

[1]   The relevance of Professor Green's purported expert opinion is not apparent given that Professor Green concedes he has "no first-hand knowledge of the relevant facts" (Strauber Decl. Ex. A ¶ 12), and, at its core, his report is simply an additional legal brief in opposition to the government's Motion. *See Client Funding Solutions Corp. v. Crim*, 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013) ("Opinions that amount to legal conclusions do not assist the trier of fact."); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (finding an expert's "testimony as to the applicable legal standard was plainly erroneous, thus demonstrating the

from David Meister (Strauber Decl. Ex. B), changes the undisputed facts regarding Meister's involvement in the CFTC Silver Investigation, which demonstrate that he was personally and substantially involved. Meister's representation of Nowak in this case, therefore, continues to raise significant concerns about a possible conflict of interest under Rule 1.11(a)(2) of the New York Rules of Professional Conduct.

The factual record is clear—and undisputed—that as the CFTC Enforcement Director, and prior to his recusal, Meister oversaw the CFTC Silver Investigation, which was a large, high-profile matter that was the focus of at least one CFTC Commissioner. Meister himself acknowledges that he "spoke with others at the CFTC concerning the CFTC Silver Investigation" and he has "a general recollection of the substance of at least some of these discussions," although without "recall[ing] the details of these discussions." (Strauber Decl. Ex. B ¶ 6.) Further, Meister does not dispute that he "had supervisory responsibility for the silver investigation" and that, until he was recused, he received "briefings from staff, emails, and memoranda about the investigation." (Sullivan Decl. Ex. D at 1.) Meister's role and involvement is unsurprising given that the CFTC Silver Investigation, as Meister himself notes, was a large undertaking involving a significant amount of CFTC resources and, therefore, would have been a focus of anyone in Meister's position as Enforcement Director. ((*See* Strauber Decl. Ex. E at 1.) (stating that by November 2011, three

---

danger in allowing experts to testify as to their understanding of the law" and noting that "[e]ach courtroom comes equipped with a 'legal expert,' called a judge").

years into the Silver Investigation, the CFTC already had "analyzed over 100,000 documents and interviewed dozens of witnesses and obtained expert advice" in the course of its "long, detailed, and thorough investigation").)

In addition, the fact that Meister discussed the CFTC Silver Investigation with others, and received briefings and other information about it, makes sense given the high-profile nature of the investigation. Just *six days* before the public announcement of Meister's appointment as Enforcement Director, (*see* Sullivan Decl. Ex. E), CFTC Commissioner Bart Chilton publicly noted the importance of the ongoing CFTC Silver Investigation and stated:

> I believe that there have been repeated attempts to influence prices in the silver markets. There have been fraudulent efforts to persuade and deviously control that price. Based on what I have been told by members of the public, and reviewed in publicly available documents, I believe violations to the Commodity Exchange Act (CEA) have taken place in silver markets and that any such violation of the law in this regard should be prosecuted.

(Sullivan Decl. Ex. C at 2.) Commissioner Chilton continued in his statement to say that, "I am hopeful that the agency will speak publicly about the investigation in the very near future and when they do so that it will be in a more granular fashion than I am permitted from doing at this time." (*Id.*) The Silver Investigation clearly was a priority for the CFTC and at least one of its Commissioners, who made the rare public comment about an ongoing investigation to say he believed there had been attempts to manipulate the silver markets. Thus, it comes as no surprise that Meister, as the

CFTC Enforcement Director, was personally involved with CFTC Silver Investigation and that he received briefings and discussed it with others at the CFTC.

Despite the clear importance of the Silver Investigation to the CFTC, Meister claims that he only had "[m]ere formal supervisory responsibility" (Response at 23), and he attempts to minimize the investigation as just one of "hundreds of others within his official oversight" (*id.* at 22). Meister's dismissive characterization of the investigation and his role, however, is belied by the public, high-profile nature of the investigation and the significant resources the CFTC had devoted to the Silver Investigation.

Finally, Meister's recusal from the CFTC Silver Investigation is further evidence of his level of involvement and substantive understanding of the investigation. His decision to recuse shows that Meister was sufficiently aware of the substance of the CFTC Silver Investigation to determine that, in fact, he should recuse himself from the investigation. (*See* Strauber Decl. Ex. B ¶ 6.) (stating Meister "elected to recuse from the CFTC Silver Investigation as a result of my prior representation of a client in an unrelated matter involving another agency").) While Meister provides little detail in his Response on the exact reason for his recusal, the CFTC has explained that Meister "recused himself from the investigation in light of his prior representation of *another JP Morgan employee* in an unrelated matter." (Sullivan Decl. Ex. D at 1 (emphasis added).) Clearly, Meister knew enough about the substance of the CFTC Silver Investigation—and, in particular, that conduct at JP Morgan was a focus of the investigation—to recuse himself from the matter.

The facts discussed above, together with those set forth in the government's Motion, demonstrate Meister's personal and substantial participation in the CFTC Silver Investigation. The Superseding Indictment in this case alleges that Meister's client in this case, Nowak, gave false answers to questions from a CFTC investigator during that same investigation. (*See* Superseding Indictment ¶ 40 (Dkt. No. 52).) Given these circumstances, it is difficult for the government to see how, consistent with the applicable Rules of Professional Conduct, a lawyer can defend a client against allegations that the client made false statements in connection with a CFTC investigation when that lawyer was personally and substantially involved with that same investigation while the CFTC Enforcement Director.

II. **The Court Should Confirm on the Record that Nowak Has Provided a Knowing and Intelligent Waiver of Any Actual or Potential Conflicts**

As set forth in the Response and Exhibit C to the Strauber Declaration, Nowak has retained separate counsel to advise him in connection with the issues raised in the government's Motion regarding Meister's actual or potential conflicts of interest in this case. It appears Nowak has discussed the issues with separate counsel, and separate counsel believes that Nowak has sufficient information to make a knowing and intelligent waiver of any conflicts of interest presented by Meister's role as CFTC Enforcement Director, including any confidential CFTC information that Meister has acquired, and that Nowak has executed a written waiver of any of the potential or actual conflicts raised in the government's Motion. (*See* Strauber Decl. Ex. C ¶¶ 5-7.) Accordingly, the government respectfully renews its suggestion that the Court

conduct a colloquy on the record with Nowak to ensure that he has provided his informed consent and a knowing and intelligent waiver of any conflicts presented by Meister's representation of him in this case.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court hold a hearing to determine whether Meister has a conflict in this matter and, if so, to take appropriate remedial measures in order to protect Nowak's Sixth Amendment rights and the integrity of these proceedings.

Dated:  February 24, 2020

        Respectfully submitted,

        ROBERT A. ZINK
        Chief, Fraud Section
        Criminal Division
        U.S. Department of Justice


By:    */s/Matthew F. Sullivan*
        Matthew F. Sullivan, Trial Attorney
        Avi Perry, Assistant Chief
        1400 New York Avenue, N.W.
        Washington, D.C. 20530
        matthew.sullivan2@usdoj.gov/(202) 353-6200
        avi.perry@usdoj.gov/(202) 616-4619

**CERTIFICATE OF SERVICE**

I, Matthew F. Sullivan, hereby certify that on February 24, 2020, I caused the foregoing Reply Brief in Support of the United States' Motion for a Hearing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

    /s/*Matthew F. Sullivan*
    Matthew F. Sullivan