UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:19-CR-00669 |
| v. ) | |
| ) | Judge Edmond E. Chang |
| GREGG SMITH, ) | |
| MICHAEL NOWAK, ) | |
| JEFFREY RUFFO, and ) | |
| CHRISTOPHER JORDAN, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

In advance of the pretrial conference, the Court issues the following decisions on the motions in limine concerning expert testimony. Although the Order goes witness by witness, the analyses at times overlap as noted.

Generally speaking, the decision whether to admit expert testimony requires an inquiry into three requirements: whether (1) the expert is qualified by knowledge, skill, experience, training, or education; (2) the reasoning or methodology underlying the expert's testimony is reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a factual issue. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893–894 (7th Cir. 2011).

### I. Defense Motions

**Jonathan Luca (R. 324).** The Defendants seek to exclude the testimony of FBI Special Agent Jonathan Luca, arguing that (1) he fails to meet Rule 702 requirements; (2) he impermissibly seeks to opine on Defendants' mental state; (3) his testimony would introduce inadmissible hearsay and risks improper bolstering; and (4) his dual-role testimony (that is, fact plus expert) will be confusing and unfairly prejudicial. R. 327[1], Defs.' Br. at 2–14.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

On qualifications, the defense contends that Luca's "brief" experience as a precious-metals trader is insufficient to qualify him as an expert. Defs.' Br. at 3. But Luca has sufficient experience to qualify as an expert witness on the meaning of the terms that precious-metals traders use due to his decade of experience as an FBI agent investigating spoofing cases, combined with his previous experience as a precious-metals trader. R. 403, US Resp. at 2. Indeed, he has qualified as an expert on this subject in two other Northern District spoofing cases, *United States v. Vorley*, 18-CR-00035, R. 314 at 1–2 (N.D. Ill. Sept. 9, 2020), and *United States v. Bases*, 18-CR-00048, R. 586 at 19–20 (N.D. Ill. July 1, 2021). Luca's qualifications are not a Rule 702 problem, though of course the defense may cross-examine him on them to refute his credibility (and the government must lay the foundation as to barrier options as noted below).

Likewise, the Defendants' contention that Luca's testimony would violate Rule 704(b) bar on element-mental-state testimony also fails—so long as he does not assert in crime-element terms what the Defendants intended to do when explaining what certain phrases mean. *See United States v. Winbush*, 580 F.3d 503, 512 (7th Cir. 2009) ("Although an expert may not testify or opine that the defendant actually possessed the requisite mental state, he may testify in general terms about facts or circumstances from which a jury might infer" the defendant's intent). With regard to the risk of inadmissible hearsay or bolstering, neither risk is genuine here. Luca's proposed testimony is not a mere conduit for hearsay; like any other expert, he will rely on what he has learned over the years investigating spoofing and when he worked as precious-metals trader. *See Bases*, 18-CR-00048, R. 586 at 21. And of course Luca will (and must) testify from his own experience and knowledge, and his own review of the cats, rather than mimic what other witnesses say. *See id.* at 20–21. That said, the Court notes that there is somewhat less specificity on Luca's experience with barrier options, so the government must take special care at trial in laying the foundation for that specific topic and this might become an appropriate objection at trial.

On dual-role testimony, the Seventh Circuit instructs trial courts to take great care and pay close attention to the risk of a fact-and-expert witness moving back and forth between their role as an expert witness and their role as a fact witness. Absent appropriate guard rails, juries might very well get confused about how the overlapping testimony is sourced to each distinct role. So the Court will apply safeguards that reasonably ensure that the jury knows when Luca is testifying as a fact witness versus as an expert witness. *See United States v. Parkhurst*, 865 F.3d 509, 518–19 (7th Cir. 2017) ("These precautions tell the jury what it needs to know to determine how much weight to give the testimony and the opposing counsel what he needs to

know to cross-examine the witness effectively."). The Court will require Luca to testify first as a fact witness and the government must conduct its direct examination accordingly. The defense then will have the opportunity to cross-examine Luca on the fact testimony (and the redirects and recrosses would follow as usual). At the end of the fact-witness testimony, the Court then will explain to the jury that Luca will now be testifying as an expert witness. The government will put on the direct of this separate testimony, followed by cross-examination of Luca in this capacity (and redirects and recrosses).

When Luca is testifying as an expert, if the government presents any chats as demonstrative exhibits, then Luca must make clear that he is now testifying based on general expertise and not on special knowledge about this case or the investigation. Also, the government cannot ask him to match chats with specific trading activity; the connection between those chats and trades must be proven independently and not via Luca's opinion. With these limits in place, Luca may testify as both facts and expert opinions.

**Armand Nakkab (R. 329).** The Defendants seeks to exclude the proposed opinion testimony of Armand Nakkab, the former Managing Director of Compliance for the Global Commodities Group at JPMorgan. R. 330 Defs.' Br. at 1. This motion is denied in large part: as the government correctly notes, R. 402, US Resp. at 1–2, given Nakkab's direct interaction with the Defendants and his knowledge of their trading activity (as reported to him), as well as his direct knowledge of JPMorgan's compliance policies, Nakkab's testimony is primarily comprised of facts and lay opinions, not Rule 702 expert testimony (with the possible exception of a line of questioning described below). Nakkab's compliance-related testimony is more akin to one of the examples cited by the 2000 Advisory Committee Note to Rule 701, specifically, a business officer who is permitted to offer lay opinion testimony of the value of a business based on the "particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701, 2000 Adv. Committee Note. Although the distinction between Rule 701 testimony versus testimony "of the type traditionally considered within the purview of Rule 702," *see id.* (explaining why the words "withing the scope of Rule 702" were added to Rule 701(c)), is not always crystal clear, this JPMorgan-specific compliance testimony best fits as lay opinion testimony.

What's more, even if Nakkab were to be considered a Rule 702 expert, his proposed testimony would be admissible under that rule. The qualifications requirement is readily satisfied by his extensive experience in commodities-compliance enforcement, most significantly arising from his former role as JPMorgan's Managing Director of Compliance, which is on top of his experience as a CFTC enforcement attorney

and commodities trader. US Resp. at 2–3. And Nakkab knows the company's compliance policies that were in effect in the pertinent time period of 2008 to 2014. *Id.* Nor is it disqualifying, as the defense argues, Defs.' Br. at 11, under Rule 702 for the government to have provided Nakkab certain materials for review. There is nothing unusual about a party providing materials to an expert for review, and cross-examination is the usual way to take care of selective provision of materials (unless the cherry-picking undermines the validity of the opinion, which does not apply here). In any event, Nakkab's testimony in his role as a compliance director is permissible under Rule 701 even without recourse to Rule 702.

There is one important line of proposed questioning, however, that comes closer to Rule 702 testimony and thus must be treated with appropriate dual-role safeguards. The government proffers that "with the benefit of additional information that [Nakkab] presently has but did not have during the compliance review in 2013 — among other things, approximately 50 examples of Defendant Smith's trading activity—Mr. Nakkab's view presently is that Defendant Smith's trading activity was problematic and was not consistent with JPMorgan's anti-manipulation policies and trainings." US Resp. at 5–6. The government analogizes Nakkab's post-events-review testimony to accountant testimony in *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), but the comparison is not quite apt. In *Cuti*, the accounting principles at issue were explained in detail and the accountants were then asked if they would have acted differently if they had been aware of certain facts unknown to the accountants at the earlier time. *Id.* at 460–61. *Cuti* did hold that the accountants' testimony could be considered Rule 701 testimony despite the specialized knowledge underlying accounting. *Id.* at 460. But there the accounting principles were "undisputed," *id.* at 458, which is not akin to the apparent dispute over compliance here. Given that this line of questioning requires Nakkab to respond to hypotheticals on a topic that requires his extensive experience and knowledge, it is safer to treat the testimony as Rule 702 testimony.

As discussed earlier, Nakkab does qualify as an expert under Rule 702: he is reliably applying that expertise to the new information (this will be subject to laying the proper foundation at trial, as well as to cross-examination); and this testimony will be helpful to the jury. For this part of the testimony, however, the government must pause and flag for the Court that the witness is transitioning to expert testimony. The Court then will explain to the jury the distinction between the prior factual and lay-opinion testimony and the upcoming expert testimony. On that condition, the motion to exclude Nakkab's testimony is denied.

**Peter Leider and Brian Wika (R. 333).** The Defendants seek to exclude the testimony of Peter Leider, former senior analyst at the Chicago Mercantile Exchange (CME), and Brian Wika, Manager in CME's market regulation division. R. 334 Defs.' Br. at 1. The government asserts that these witnesses are offering lay opinion testimony about historical facts and their direct perception of Smith's trading activity, and thus do not fall into the category of expert testimony. R. 404, US Resp. at 1.

The Court agrees that, generally speaking, neither Leider's nor Wika's testimony is governed by Rule 702. These two CME employees plan to testify to their roles in the CME's investigation of Defendant Smith's trading, US Resp. at 2, which indeed is fact testimony. Their perceptions of the trading activity too is similar to Nakkab's lay opinions on compliance (other than the post-events-review hypotheticals) arising out of their role with CME. *See also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (application of specialized knowledge does not render a witness's testimony as "'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise.") (cleaned up).[2]

Having said that, much of the summary of Wika's and Leider's proposed testimony is identical. Almost surely, an attempt to put on both witnesses and the duplicative testimony would violate Rule 403's bar against wasteful cumulativeness. So the government should present the most important of the two first, because there is little prospect that the other would be allowed. Also, the government also does not provide much response to the defense assertion that Wika does not remember what happened with the Smith investigation. R. 334, Defs.' Br. at 11. A witness whose memory must be constantly refreshed with documents or simply sponsors past recollection recorded documents also risks violating Rule 403, because the probative value is low and the time cost is high.

Lastly, with regard to Leider, there is an additional sentence in the summary to the effect that he did not find Smith's explanations to be credible. United States Expert Witness Disclosures at 6. That is not substantively admissible opinion testimony. At the very most, it would be allowed to explain Leider's next steps and would be accompanied by a jury instruction that limits its consideration to that sole purpose.

**Robert Sniegowski (R. 336).** The Defendants seek to exclude portions of Robert Sniegowski's testimony, specifically that the CME Group has always required that

---

[2]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

orders show a "genuine intent to buy or sell" and that it is a violation for a trader to place an order without that intent. R. 373, Defs.' Mot. Limine at 1. In response, the government explains that Sniegowski has worked at the CME for around 30 years and has dealt exclusively with "CME rules and the trading practices prohibited by those rules." R. 405, US Resp. Mot. Limine at 2.

Unlike Leider and Wika, however, the government will not elicit from Sniegowski any testimony on the Defendants' specific trades. US Resp. Mot. Limine at 5. So Sniegowski's testimony is permitted as Rule 702 expert testimony because he is a qualified witness on the proposed topics as evidenced by his tenure at the CME; his testimony is reliable given that he is specifically relying on his experience at the CME; and his testimony will be helpful in explaining to the jury what trading practices are barred by CME. Sniegowski's expert testimony will be allowed (as it was in the two other recent spoofing trials, *Vorley*, 18-CR-00035, and *Bases*, 18-CR-00048).

**Kumar Venkataraman (R. 373).** The Defendants seek to exclude the testimony of Kumar Venkataraman, a Professor of Finance at Southern Methodist University, concerning his analysis of the Defendants' trading activity and his conclusion that their "activity is inconsistent with an intent to execute and consistent with an intent to cancel." R. 373, Defs.' Mot. Limine at 1.

Venkataraman's testimony is admissible under Rule 702. Despite the Defendants' argument about how Venkataraman analyzed the trading data, there is nothing unusual about an expert using the same characteristics that the government relied on in selecting 489 trading sequences. As explained by Venkataraman, the sequences are sufficiently representative of the trading practices of the Defendants. That this methodology has not been subject to peer review may go to the weight of the evidence, but not to its admissibility. This distinction in the weight of evidence versus its admissibility also applies to the defense argument that Venkataraman's testimony contradicts his previous work in which he (according to the defense) explains responses to large orders in electronic markets are not predictable. Defs.' Mot. Limine at 6–7. At bottom, the government is correct that the defense arguments are potential topics for cross-examination rather than disqualifying.

## II. Government's Motions

**Michael De Laval and Jerry Markham (R. 438).** The government seeks to exclude the testimony of Michael De Laval, an expert in commodities futures and derivatives trading, and Jerry Markham, a legal historian and expert on history and regulation of financial markets, because their proposed testimony embraces ultimate issues, is irrelevant, and does not meet admissibility criteria for expert testimony (or

6

will be unduly prejudicial). R. 438 US Mot. Limine at 1; R. 438-1, Def. Jordan's Summary of Expert Testimony at 1–2.[3]

On De Laval, the government seeks to exclude proposed testimony about the general practice in which there purportedly was "no obligation to disclose a trader's 'true' intention" and the new problems that arose when the market transitioned to an electronic platform. US Mot. Limine at 4. More importantly, the government objects that De Laval's will opine that it was "legitimate" or "permissible" for traders to bid to sell, offer to buy, and trade "in the opposite direction to camouflage one's objectives." *Id.* at 5. This then is the equivalent of opining that Defendant Jordan engaged in lawful activity. As Judge Lee noted in *Bases*, using a characterization like "legitimate" would confuse the jury by providing a legal instruction from the expert to the effect that the conduct was "legally proper." *United States v. Bases*, 18-CR-00048 (N.D. Ill. July 3, 2021), R. 589 at 5.

To avoid opining on a legal conclusion, the Court adopts the same solution that Judge Lee deployed in. *Bases*: instead of labelling the trading activity as "legitimate" or "permissible," De Laval may convey that these were "commonly used trading practices in the futures market." The jury will be instructed that even if a practice is common, that does not mean that the practice is legal; at the same time, however, the commonality of a practice may bear on the Defendant's intent.

Next, the Court excludes the testimony concerning the transition period to the electronic platform, which supposedly presented regulators with new problems. There is a significant danger that this testimony will confuse the jury and waste time by delving into irrelevant historical changes. For the same reason, the Court also excludes Markham's proposed testimony on the historical evolution of laws, regulations, and CME rules against spoofing. *See United States v. Flotron*, 2018 WL 1790828, at *2 (D. Conn. Apr. 15, 2018) ("[T]here is no reason to suppose that defendant would have been aware of legislative history or public comments submitted to the commission, and this evidence could be confusing and unfairly prejudicial for reasons stated by the Government.").

The end result, then, is that the government's motion to exclude De Laval and Markham's testimony is granted in part and denied in part.

---

[3] It may be that for the July trial, there is no dispute over these two experts because these experts were offered by Defendant Jordan and Defendant Jordan has been severed from this trial. (R. 491). But it also may be that the other Defendants intended to rely on this expert, so the Court issues this decision in any event.

7

**Chester Spatt, Daniel Fischel, Ciamac Moallemi, and Raymond Keenan (R. 439).** Just as with government witnesses Leider and Wika, the defense almost surely will not be permitted to present more than one expert to testify on the same topics without some explanation for why duplication is necessary and does not present the substantial Rule 403 dangers created by duplicative testimony.

The government seeks to exclude the testimony of these four experts largely because Defendant Smith has failed to comply with the requirements of Federal Rule of Criminal Procedure 16(b)(1)(C). R. 439, US Mot. Limine at 1. Rule 16(b)(1)(C) states: "The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial … This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Although this disclosure rule is not as extensive as its Civil Rule 26(a)(2)(B) counterpart, the bases and reasons for the opinion must still be described.

For example, Defendant Smith's supplemental disclosure says that "the alleged Genuine Orders generally appear to be small-side Orders and the alleged Deceptive Orders generally appear to be Large-Side Orders." R. 464-1, Def. Smith's Supplemental Disclosure at 3. This is not specific enough; the disclosure must say exactly which of the genuine orders and which of the deceptive orders are referenced by that opinion. The explanation that "some (but not all) Type II sequences, an alleged Genuine Order was subsequently placed opposite the alleged Deceptive Orders," *id.*, lacks the level of specificity required at this stage when preparing for trial. Another example: "[m]ost of the executions of Smith's Large-Side orders occurred within two seconds," *id.*, is not sufficiently specific on which executions *specifically* are being referenced.

The defense must provide a Second Supplemental Disclosure that describes the specific bases and reasons for the expert opinions. What's more, because the trial is around five weeks away, the Defendants must specify which of the four experts will be testifying as to what topic without duplication, unless the defense provides a specific explanation why duplication is warranted. The Second Supplemental Disclosure must be provided by **June 13, 2022**, accompanied by the specification of which expert will be testifying or a motion explaining why duplication is warranted.

It is worth noting that the parties have agreed to use the term "economically rational" rather than "legitimate" when offering the defense opinion on Defendant Smith's trading activity R. 464, US Reply Mot. Limine at 1. As the Court has

8

explained for other witnesses, the use of the phrase "economically rational" is acceptable, but the term "legitimate" is not.

**Jeremy Cusimano, Christian Salomone, Scott Early (R. 440).** The government seeks to exclude the testimony of Defendant Nowak's proposed experts, arguing that the Rule 16 expert disclosures are inadequate, the testimony is impermissible, and the witnesses are unqualified. R. 440, US Mot. Limine at 1.

Just as with Smith's experts, given the five-week mark before trial, it is time for the Rule 16 summaries to be more specific. For both Cusimano and Salomone, the disclosures are inadequate, and the defense must supplement those disclosures. For example, one of the disclosures for Cusimano says that "most of the gold futures orders that Mr. Nowak placed were Scaled Orders," R. 465-1, Def. Nowak's Supplemental Disclosures at 2, but this disclosure fails to provide which *specific* gold futures orders were scaled orders. Another example: the disclosure for Salomone refers to testimony about "certain government identified sequences," R. 404-1, Def. Nowak's Summary of Expert Testimony at 4, but this is not specific enough. The disclosure must make clear which specific sequences are relied on for the expert's conclusion.

The government also takes issue with Cusimano's anticipated testimony that Nowak's trading activity was "consistent with a willingness to have orders executed" and whether an order "represents at most the trader's willingness to trade." US Mot. Limine at 6. Although this presents a close question, the Court holds that this testimony is admissible. To be sure, there is a valid concern that if an expert opines on the "willingness" to trade, the jury may confuse this as the proper standard for determining if Nowak had the requisite mental state for the crime. But if a trader indeed is *willing* to execute the trade, this does have *some* tendency—that is, it is relevant— to show that he did *intend* to trade. So Cusimano may testify that he examined Nowak's trading activity and opine that it showed a willingness to trade. Having said that, as previously discussed, Cusimano cannot use the term "legitimate" to refer to trading strategies lest the opinion impermissibly take on the patina of a jury instruction.

Finally, under Rule 702, the Court excludes the testimony of Scott Early. Earley's experience with the Board of Trade of the City of Chicago (from 1983 to 1994) was not during the pertinent period for this case (2008 to 2016). What's more, this case concerns trading on COMEX and NYMEX; although CBOT eventually merged with the Chicago Mercantile Exchange, this was long after Earley's tenure at CBOT. US Mot. Limine at 10–11. For these reasons, Earley is not qualified to opine on what orders on COMEX and NYMEX conveyed to the market during the pertinent period.

9

The topic on which Earley is qualified to testify—historical practices of the CBOT—is not relevant to this case. His proposed testimony is excluded.

ENTERED:

 s/Edmond E. Chang 
Honorable Edmond E. Chang
United States District Judge

DATE: June 2, 2022