UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGG SMITH,<br>MICHAEL NOWAK, and<br>JEFFREY RUFFO<br><br>Defendants. | Case No. 19-cr-00669<br><br>Hon. Edmond E. Chang |

**MESSRS. NOWAK AND RUFFO'S JOINT MOTION TO EXCLUDE IN WHOLE OR IN PART THE GOVERNMENT'S PROPOSED COMPLIANCE-RELATED EXHIBITS**

Per the Court's direction at the pretrial conference on June 2, 2022, *see* Pretrial Conf. Tr., ECF No. 533, at 108–09, Defendants Michael Nowak and Jeffrey Ruffo jointly move to exclude, in whole or in part, proposed government exhibits ("GX") 131–43, 146–56, and 158–72 (the "Compliance-Related Exhibits"), which consist of various JPMorgan policy manuals, training materials, compliance bulletins, and other such documents, each relating to one or more JPMorgan business units.

Messrs. Nowak and Ruffo maintain that the Compliance-Related Exhibits should be excluded because they are largely irrelevant, may cause significant juror confusion, and pose a substantial risk of unfair prejudice to Defendants, as argued at the June 2 conference, *see* ECF No. 533, at 104–09.

But in the alternative, as described below and highlighted in Appendix A hereto, we respectfully submit that the Court should exclude portions of the Compliance-Related Exhibits that contain (i) inaccurate, misleading, or confusing statements of law applicable or ostensibly applicable to the charges in this case, (ii) certain unfairly prejudicial statements interpreting,

1

opining on, or providing examples of offenses charged here, and (iii) inflammatory and unfairly prejudicial statements concerning other enforcement actions, including actions involving charges similar to those in this case, which variously are irrelevant, pose a substantial risk of unfair prejudice to Defendants, and may cause significant juror confusion.

## I. DISCUSSION

The government's proposed Compliance-Related Exhibits include various policies and trainings that purport to instruct employees on avoidance of, among other things, "fraud," "manipulation," and "spoofing," but which contain inaccurate, misleading, or confusing statements regarding legal standards in the context of the law that the jury will be instructed to apply in this case. In particular, as highlighted in Appendix A,[1] the Compliance-Related Exhibits variously:

1. Suggest that the government need prove only "recklessness" to establish fraud, manipulation, or spoofing, *see* App. A at 21, 25, 30, 35, 40, 56, 81 (GX 136–40, 146, 162, for fraud), 56, 81, 92, (GX 146, 162, 166, for manipulation), and 60, 81, 124 (GX 148, 162, 171, for spoofing), when the government here must prove that Defendants acted "knowingly," *see* Proposed Jury Instructions, ECF No. 514-1, at 60, 72, 92, 110;

2. Define "material facts" as those that are merely "relevant to a trading or business decision," App. A at 21, 25, 29, 34, 40, 45 (GX 136–41), which is inconsistent with the appropriate materiality standard of having "a natural tendency to influence the decision of reasonable persons," ECF No. 514-1, at 85–86;

3. Incorrectly state that "manipulation" or "manipulative" conduct does not require any particular intent, *see* App. A at 45, 52, 54, 56, 77, 81, 102 (GX 141–143, 146, 158, 162, 168), or fail to state that manipulation requires specific intent to create an artificial price, *see e.g.,* App. A at 21–22, 25–26, 29–30, 34–35, 39–40, 45–47, 52, 54, 58, 68, 70, 74, 76–77, 81, 83, 91–96, 102–03 (GX 136–43, 147, 152, 154, 156, 158, 162–63, 166, 168);

4. Define "artificial price" as "a price not determined by supply and demand," App. A at 52, 54 (GX 142–43), when the appropriate definition in the context of this case is a

---

[1] Appendix A includes proposed redactions to GX 165 and 171, which are transcripts of audio recordings of compliance trainings that the government has offered as GX 164 and 170. We submit that the portions of the audio recordings corresponding to the redacted portions of the transcripts in Appendix A likewise should be excluded.

2

price that "the defendant understood to not reflect the forces of supply and demand," ECF No. 514-1, at 64;

5. Define "spoofing"—which is placing a bid or offer with the unconditional intent, at the time of placement, to cancel the bid or offer before execution, *see* ECF No. 514-1, at 113—in multiple incorrect and inconsistent ways, including, for instance, "submitting bids or offers which *are not intended to be filled*," App. A at 124 (GX 171), placing bids or offers but "*not intending to trade*," App. A at 85 (GX 165), "bidding or offering with the intent to cancel before execution *to give false intent to buy/sell*," App. A at 95 (GX 166), and "entry of bids or offers . . . *without the intent to execute* the trade *or in order to achieve any of the following:* . . . move the price of a product or a related product (e.g. barrier option)," App. A at 48 (GX 141);[2] *see also* App. A at 60, 62, 65, 103 (GX 148–50, 168);

6. Address fraud by omission, *see* App. A at 21, 25, 29, 34, 39–40, 44–45 (GX 136–41), which is not alleged in the indictment in this case, and which may confuse the jury as to whether any purported omissions can be a basis for fraud here;

7. Classify spoofing as "manipulation" or characterize it as "manipulative," *see* App. A. at 48, 62, 65, 67–68, 95, 103 (GX 141, 149–50, 152, 166, 168), which poses a substantial risk of confusing the issues and conflating spoofing and attempted price manipulation;

8. Vaguely address inapplicable legal standards from "some" or "many jurisdictions," *see, e.g.*, App. A at 52, 54 (GX 142–43; "proof of intent is not a necessary element . . . in many jurisdictions"), and 92 (GX 166; stating, under the heading "Manipulation/Market Abuse: Legal Standards," that "in some jurisdictions, regulators contend that materiality does not matter"), which poses a substantial risk of juror confusion; and

9. Misstate the second element of attempted manipulation as an "overt act" or an act "to further that intent," App. A at 3, 5, 9, 14, 17 (GX 131–35), in place of the required "substantial step," *see* ECF No. 514-1, at 60, and fail to indicate that the act must be done knowingly, *see id.*[3]

---

[2] Additionally, GX 141 problematically equates "spoofing" with "layering," and states that "[p]artial or complete fills of an order are *not necessarily sufficient proof that spoofing or layering did not occur*," when of course it is the government's burden to prove spoofing, not Defendants' burden to prove that "spoofing or layering did not occur." App. A at 48.

[3] We respectfully submit that GX 131–35 would more appropriately be excluded in their entirety. These five exhibits, which are versions of a JPMorgan Energy Compliance Manual (collectively, 384 pages), are almost entirely devoted to policies and regulations applicable solely to the energy markets—for instance, obligations imposed by the Federal Energy Regulatory Commission and the Electric Reliability Council of Texas—which are irrelevant to the precious-metals trading that is the subject of this case and to the precious-metals trading desk on which Defendants worked. Each of the five exhibits contains less than three pages of theoretically relevant but cumulative content relating to the Commodity Futures Trading Commission ("CFTC"). We further submit that the Court should fully exclude GX 168, a 62-page "Market Abuse and Information Barriers Training" for the EMEA region, because it relates solely
*(cont'd)*

Moreover, the Compliance-Related Exhibits include statements of opinion or interpretation regarding the law, which may confuse and bias the jury, posing a substantial risk of unfair prejudice to Defendants. In particular, as highlighted in Appendix A, the Compliance-Related Exhibits variously:

1. Provide unfairly prejudicial opinions on the priorities and motivations of regulators, *see, e.g.*, App. A at 74, 76 (GX 156, 158; "regulators consider [trading to affect settlement] very seriously," and a "pattern of [placing non-economic trades] will be flagged by regulators for review"), and 92 (GX 166; investigations are being "based on not just complying with the letter of the law, but also the spirit of the law");

2. Opine on factors that may be indicative of spoofing, *see, e.g.*, App. A at 48, 67 (GX 141, 152), and on types of conduct that regulators may consider manipulative, *see, e.g.*, App. A at 21 (GX 136; "[a]ctivities that create a false or misleading appearance with respect to volume, depth (liquidity), activity or the price of a Covered Product or otherwise to induce market activity by others are likely to be considered manipulative.");

3. Make speculative or conclusive statements regarding the law that are not supported by evidence and may confuse the jury, *see, e.g.*, App. A at 81 (GX 162; claiming that activities prohibited by the CFTC are the "same as long-standing JPM requirements prohibiting fraud and market manipulation (e.g., prohibitions on trades with no economic rationale, making misleading statements or omissions)"), and 91 (GX 166; manipulation is "broadly defined and takes on many forms"); and

4. Provide examples of conduct or lists of scenarios that purportedly constitute manipulation, *see e.g.,* App. A at 5–6, 9–10, 13–15, 17–18, 21–22, 25–26, 29–30, 34–35, 39–40, 45–47, 81, 92–96, 103–09 (GX 132–41, 162, 166, 168), or spoofing, *see* App. A at 62, 67–68 (GX 149, 152), posing a substantial risk of confusing the jury by presenting certain conduct as *per se* criminal.

Finally, the Compliance-Related Exhibits include inflammatory references to enforcement actions involving spoofing, fraud, and other offenses, *see* App. A at 62, 65, 67–68, 85, 95, 118, 122 (GX 149–50, 152, 165–66, 169, and 171, for spoofing), and 85, 89–90, 94, 96–99, 118, 121–

---

to irrelevant and confusing EMEA market-abuse regulations and provides standards for "manipulation" and "spoofing" that materially differ from those that the jury will be instructed to apply in this case. *See, e.g.*, App. A at 102 ("[T]here need not be an intention to engage in market abuse for an offence to occur. If the effect of your behavior is abusive, then it will amount to market abuse."). And without these irrelevant, confusing, and unfairly prejudicial materials, the remaining Compliance-Related Exhibits would still amount to more than 380 pages of policies, trainings, and related documents.

23 (GX 165–66, 169, 171, for fraud and other offenses), which risk biasing the jury and tarring Defendants with the same brush. We submit that these statements should all be redacted and excluded, as highlighted in Appendix A.

## II. CONCLUSION

For the foregoing reasons, Messrs. Nowak and Ruffo respectfully submit that the Court should exclude the portions of the Compliance-Related Exhibits indicated in Appendix A.

Dated: June 10, 2022

Respectfully submitted,

 /s/ Guy Petrillo  
Guy Petrillo  
Daniel Z. Goldman  
PETRILLO KLEIN & BOXER LLP  
655 Third Avenue  
New York, NY 10017  
(212) 370-0331  

*Counsel for Jeffrey Ruffo*

 /s/ David Meister  
David Meister  
Chad E. Silverman  
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP  
One Manhattan West  
New York, NY 10001  
(212) 735-2100  

William E. Ridgway  
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP  
155 North Wacker Drive  
Chicago, IL 60606  
(312) 407-0449  

*Counsel for Michael Nowak*