UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 19 CR 669 |
| GREGG SMITH, MICHAEL NOWAK, and JEFFREY RUFFO, | Judge Edmond E. Chang |
| Defendants. | |

**UNITED STATES' MOTION TO EXCLUDE EVIDENCE OR QUESTIONING RELATED TO ROBERT JACKSON**

The United States moves *in limine* to preclude defendants from introducing evidence or questioning any witness regarding business dealings between Corey Flaum, a cooperating witness for the United States in this case, and an individual named Robert Jackson. Such evidence is irrelevant to this case, not probative of Mr. Flaum's character for truthfulness, and would cause unnecessary delay and confusion.

**I.  Factual Background**

Robert Jackson is listed as a potential witness on the defendants' most recent witness list filed on July 1, 2022 as someone who "will provide testimony regarding Mr. Flaum's credibility." (*See* Doc. No. 578, Ex. A).  As described below, Mr. Jackson was recently ordered by a state court to re-pay the balance of a business loan owed to a company belonging to Mr. Flaum, and the purpose of Mr. Jackson's testimony appears to be to paint Mr. Flaum as a predatory lender.

As background, in April 2021, Mr. Flaum's company, A.C.K. Investments LLC ("A.C.K."), entered into an Amended and Restated Future Receivables Sale and Security Agreement with Mr. Jackson's company, Eastern Financial Services LLC ("Eastern Financial") (the "Agreement"), under which A.C.K. purchased approximately $354,992 of future receivables from Eastern Financial. Mr. Jackson defaulted on the terms of the Agreement and, in September 2021, A.C.K. filed a lawsuit against Mr. Jackson and his company. On November 23, 2021, the Circuit Court for the Fifteenth Judicial Circuit for Palm Beach County, Florida, entered into a default final judgment against Mr. Jackson and Eastern Financial in the amount of $425,959.41. In March 2022, the parties reached a settlement agreement and since that time, Mr. Jackson has made monthly payments to A.C.K. pursuant to the terms of that agreement.

In late 2021, while A.C.K.'s lawsuit against Mr. Jackson was pending (and before a settlement was reached), Mr. Jackson was interviewed by the FBI (specifically, by the case agents working on this matter), and he provided the agents with various emails and text messages concerning his business dealings with Mr. Flaum. Mr. Jackson repeatedly texted Mr. Flaum with what appear to be questions about Mr. Flaum's criminal conviction, which Mr. Jackson appears to have learned from publicly available sources.

During an interview with the FBI on October 7, 2021, Mr. Jackson stated that, during a conversation between with Mr. Flaum, Mr. Jackson told Mr. Flaum that he knew about Mr. Flaum's "history of legal issues with the Department of Justice" and

in response, Mr. Flaum allegedly stated that Mr. Flaum had "beat the DOJ case and that Mr. Flaum would beat any case filed in return by Mr. Jackson." When asked about this alleged statement by representatives from the United States on October 29, 2021, Mr. Flaum emphatically denied that he ever made any such statement to Mr. Jackson.[1]

## II. The Court Should Preclude Testimony from Mr. Jackson and Any Other Extrinsic Evidence Related to Mr. Jackson's Business Dealings with Mr. Flaum

The defendants should not be permitted to call Mr. Jackson as a witness. Mr. Flaum's business dealings with Mr. Jackson are neither relevant to the charges in this case nor probative of Mr. Flaum's character for truthfulness. Moreover, even to the extent that it is probative of Mr. Flaum character for truthfulness, Mr. Jackson's testimony concerning his now-resolved business dispute with Mr. Flaum is not admissible under Federal Rule of Evidence 608(b) because it would constitute extrinsic evidence of a specific instance of Mr. Flaum's conduct offered to attack his character for truthfulness.

---

[1] The latest communication between Mr. Jackson and Mr. Flaum occurred on or about June 30, 2022, in which Mr. Jackson sent the following text message to Mr. Flaum: "*Hey buddy. I know it's kind of random that I'm texting you but I just wanted you to know I helped you out in a major way today. If you care to call me tomorrow to discuss how, I'd be glad to. If not, you are welcome. Hope you and your family are well.*" This text message was sent following a June 30, 2022 telephone call between representatives from the government and Mr. Jackson, during which Mr. Jackson said that he did not plan on attending the trial. This text message was unsolicited, Mr. Flaum did not respond to this text message, and the government has no reason to believe that Mr. Flaum knew the reference in the text message.

As a threshold matter, evidence relating to the business loan made by Mr. Flaum's company to Mr. Jackson is entirely unrelated to this case: it does not involve or relate to any defendant, co-conspirator, or other witness, the events did not take place during the relevant time period at issue in this case, and they do not relate to Mr. Flaum's testimony concerning his prior work as a precious metals trader who worked alongside of defendants Smith and Ruffo.

Moreover, evidence relating to Mr. Flaum's business dealings with Mr. Jackson is not probative of Mr. Flaum's character for truthfulness and is therefore not admissible under Rule 608(b). The circumstances of a particular act offered to impeach under Rule 608(b) must involve false statements, deception, or other behavior that is closely associated with dishonesty and untruthfulness. *See United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (finding that the trial judge did not abuse her discretion when she prohibited cross-examination where conduct "does not necessarily implicate fraud, deceit, or dishonesty" and there was "nothing in the record to suggest that [the witness] had any deceptive intent"). The underlying facts show that Mr. Flaum's company provided a business loan to Mr. Jackson, and pursued legal recourse when Mr. Jackson failed to repay the loan in accordance with the contract. There is no evidence of which the United States is aware that Mr. Flaum misled Mr. Jackson with respect to the terms of the business loan or otherwise.

At most, the defendants may argue that such evidence relates to Mr. Flaum's untruthfulness based on a purported omission in his dealings with Mr. Jackson. Specifically, Mr. Jackson complained that Mr. Flaum should have disclosed

information about Mr. Flaum's criminal conviction. Importantly, Mr. Jackson had the opportunity to litigate these issues in Florida state court and decided against it. Moreover, it is unclear whether Mr. Flaum had such a duty to disclose in the context of his business dealings with Mr. Jackson and any effort to lay such a foundation would require its own mini trial.

Finally, Rule 608(b) makes clear that, with an exception for criminal convictions governed by Rule 609, extrinsic evidence cannot be used to attack a witness's character for truthfulness.[2] Any testimony from Mr. Jackson would be exactly that: statements about specific instances that would be used to attack Mr. Flaum's character for truthfulness. As a result, the Court should bar defendants from calling Mr. Jackson as a witness in this case because his testimony is not admissible under Rule 608(b).

### III. The Court Should Preclude Defense Counsel from Inquiring About Mr. Jackson During Their Cross-Examination of Mr. Flaum

Similarly, the defendants should be precluded from cross-examining Mr. Flaum about his business dealings with Mr. Jackson because such inquiries are not relevant to the charges in this case under Rule 401 and are not probative of

---

[2] To the extent that defendants intend to rely on Rule 608(a) as a basis to allow Mr. Jackson's testimony under the premise that his testimony is "opinion evidence" of Mr. Flaum's character for truthfulness, this should be rejected because any testimony offered by Mr. Jackson would be based on and related to a specific instance of Mr. Flaum's alleged character for untruthfulness, which is prohibited by Rule 608(b).

Mr. Flaum's character for truthfulness under Rule 608(b).[3] Although Rule 608(b) allows cross-examination regarding specific instances of conduct concerning the witness's character for truthfulness, the conduct "must be sufficiently relevant to truthfulness before it can be the subject of cross-examination." *United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014). In *Abair*, the Seventh Circuit found that a district court abused its discretion by allowing cross-examination of the defendant's financial filings because the government "did not provide a sufficient basis to believe the filings were probative of [the defendant's] character for truthfulness." *Id*. at 264. The Seventh Circuit noted that Rule 608(b) "requires that the cross-examiner have reason to believe the witness actually engaged in conduct this is relevant to [his] character for truthfulness." *Id*. For the reasons stated above, the defendants lack a good faith basis to pursue a line of questioning related to Mr. Jackson because there is no reason to believe that such events are in any way probative of Mr. Flaum's character for untruthfulness.

### IV. Evidence or Cross-Examination About Mr. Jackson Should Be Barred Under Rule 403

Finally, even if the Court finds that Mr. Jackson's business dealings with Mr. Flaum are relevant or probative of Mr. Flaum's character for veracity – a position that the government rejects – inquiry into this topic should be barred by Rule 403 because the danger of unfair prejudice, confusion, and delay from the introduction of

---

[3] For the same reasons, the Court should also prohibit defendants from asking witnesses from the FBI, including Special Agent Marc Troiano, about their interactions with Mr. Jackson.

such evidence substantially outweighs any probative value. *Abair,* 746 F.3d at 263-64 ("[w]hat questions are allowed [under Rule 608(b)] remains subject to the overriding protection of Rule 403, which requires that their 'probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury"). With respect to unfair prejudice, the only purpose of eliciting testimony about Mr. Jackson would be to paint Mr. Flaum as a predatory lender, and such characterization would be unfairly prejudicial, particularly when weighed against such statements' lack of probative value. Moreover, admitting evidence related to Mr. Jackson would unnecessarily prolong the trial because it would likely require the introduction of other evidence to provide the necessary context surrounding Mr. Flaum's business relationship with Mr. Jackson, including background information about the terms of the business loan agreement, Mr. Jackson's breach, the subsequent litigation, Mr. Jackson's default, and the terms of the parties' settlement. As a result, testimony related to Mr. Jackson's business dealings with Mr. Flaum is unfairly prejudicial and will cause unfair confusion and delay that far outweighs any probative value associated with such evidence.

### V. Mr. Flaum's Alleged Statement about His Criminal Case Is Inadmissible

Lastly, Mr. Jackson's claim that Mr. Flaum said he had "beat the DOJ case" is plainly inadmissible for several reasons. First, Mr. Jackson's claim lacks any indicia of reliability. Mr. Jackson's claim is disputed, uncorroborated, and inherently suspect given that it was recounted by Mr. Jackson to the FBI shortly after Mr. Flaum sued Mr. Jackson for breach of contract, among other things. Second, even if Mr. Jackson's

claim was reliable (which it is not), Mr. Flaum's purported statement cannot be used to impeach Mr. Flaum's testimony at trial. Whether or not Mr. Flaum told Mr. Jackson that he "beat the DOJ case," it does not change the fact that Mr. Flaum pleaded guilty and Mr. Jackson either knew or could have known such information from publicly available sources. Third, the Court should exclude Mr. Jackson's claim on Rule 403 grounds because such topics will result in an undue delay. Were the Court to allow Mr. Jackson to testify that Mr. Flaum said he "beat the DOJ case," the Court would also need to allow the government to elicit testimony and introduce extrinsic evidence providing critical context, including about Mr. Jackson's motives to impugn Mr. Flaum's credibility. As a result, any limited probative value of such statement would greatly outweigh the resulting undue delay and substantial waste of time.

## CONCLUSION

For these reasons, the Court should preclude defendants from introducing evidence or questioning any witness regarding recent business dealings between Mr. Flaum and Mr. Jackson.

Dated: July 10, 2022     Respectfully submitted,

/s/ *Lucy B. Jennings*
Avi Perry
Matthew F. Sullivan
Lucy B. Jennings
Christopher Fenton
U.S. Department of Justice
Criminal Division, Fraud Section
(202) 305-9708 (Jennings)

-9-

## **CERTIFICATE OF SERVICE**

I, Lucy B. Jennings, hereby certify that on July 10, 2022, I caused the foregoing filing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

/s/ *Lucy B. Jennings*
Lucy B. Jennings